121 N.J. Super. 351 (1972)
297 A.2d 193
MARY WILLIAMS, PLAINTIFF-APPELLANT,
v.
AMERICAN HOME ASSURANCE CO., ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 19, 1972.
Decided November 16, 1972.
*353 Before Judges LEWIS, CARTON and MINTZ.
Messrs. James & Addas, attorneys for appellant (Mr. Frank P. Addas, on the brief).
Mr. Edward V. Ryan, attorney for respondents (Mr. William J. Gannon, on the brief).
The opinion of the court was delivered by CARTON, J.A.D.
The issue on this appeal is whether coverage is provided to the driver of a rented vehicle against damage claims by passengers under a liability insurance policy filed pursuant to the Motor Vehicle Rental Statute, N.J.S.A. 45:21-1 et seq.
*354 There is no substantial dispute as to the salient facts. Defendant Chrysler Leasing Corp. owned a Plymouth sedan which it leased to defendant Econo-Car International, Inc., which in turn leased it to defendant Econo-Car of Jersey City, a corporation.
Defendant William Stewart, on March 26, 1965, rented the Plymouth from Econo-Car of Jersey City under a written rental agreement which referred to certain insurance protection provided by virtue of the rental agreement. When he applied for the rental Stewart stated that he had a valid New Jersey driver's license when, in fact, and unknown to him, his license had been revoked a short time previously for failure to respond to a summons in a traffic violation. In the application for the rental he did not list any other person as an intended driver of the vehicle. Accordingly, the attendant at the rental agency informed him that no one else was authorized to drive the vehicle.
At the time of the making of the rental agreement there was in force an insurance policy issued by defendant American Home Assurance Co., which was made applicable to all vehicles owned by Chrysler Leasing Corp., leased to Econo-Car International, and rented, held for rental or used for business purposes by the latter or its authorizeed dealers. This document is a blanket policy, apparently intended to be applicable on a nationwide basis, and has as its basic instrument the printed standard combination automobile policy, appended to which are numerous endorsements.
On March 29, three days after renting the car, Stewart permitted Mary Williams to drive. There is nothing in the record to indicate that she was made aware of the rental arrangements. While Mary Williams was driving the car, accompanied by Stewart who sat in the front seat, it struck a utility pole. At that time Mary Williams had no driver's license, although it appears that she had procured a learner's permit about seven months earlier which had been renewed several times but had expired some four weeks before the accident.
*355 Also riding in the car were passengers Helen James, Edward James and Susan Tynes, who sustained personal injuries in the accident. They brought actions against the driver to recover for these injuries. That litigation precipitated the present declaratory judgment action by Williams to determine the extent of the coverage afforded to her by the insurance policy.
The action proceeded against defendant American Home Assurance Co. only, the case being dismissed by consent as to defendants Chrysler, Econo-Car International and Econo-Car of Jersey City. The action was also dismissed as to Stewart, who had not been served with process. No one appeared on behalf of the passengers in the personal injury actions and trial thereof was stayed pending determination of the coverage issue.
After a trial by the court without a jury, the trial judge expressed the opinion that Williams was not afforded protection under either the terms of the policy required to be filed by N.J.S.A. 45:21-1 et seq. or under the considerably broader language of the policy actually filed.
Specifically, the trial judge ruled that Williams was neither an agent nor a servant of lessee Stewart and consequently did not fall within the language of the statute which mandated that the filed policy "shall provide for the payment * * * of any final judgment recovered by any person on account of the ownership, maintenance and use of such motor vehicle by either the owner or the lessee or bailee, his agent or servant * * *." (Emphasis added). Since determination of this appeal proceeds on other grounds, we need not decide whether, in the factual context presented here, Williams might be considered the agent of Stewart for purposes of the statute.
The trial judge held that although the insurance company was bound by the provisions of the policy broader in scope than those mandated by the statute, Williams was not covered because she was not an insured as defined in the policy. He held, further, that even if Williams came within *356 the category of an insured, Stewart's misrepresentations that he was a licensed driver and that only he would drive the car voided the policy and relieved the insurer of any responsibility to either Stewart or Williams. With respect to the injured passengers, he concluded that the mandatory noncancellability clause in the policy did not bar the insurer from cancelling the policy on account of Stewart's misrepresentations, for the reason that the statute did not extend protection to occupants of the rented car.
The trial judge correctly held that the carrier was bound by the terms of its contract despite the fact that coverage was provided therein greater than required by the statute. That determination is based upon the sound principle that a statute requiring an insurer to file a policy providing certain mandatory coverage should not have the effect of relieving the insurer of obligations it has expressly contracted for. Cosmopolitan Mutual Ins. Co. v. Continental Cas. Co., 28 N.J. 554 (1959).
In our view, however, the trial judge took too narrow a view of the obligation of the insurance company to the driver of the car and the injured passengers under the policy provisions and those of the rental agreement. Consideration of the question whether the driver of the car was an insured and, if so, the further question whether the policy was rendered void because of misrepresentations by Stewart, requires a detailed scrutiny, not only of the policy provisions, but also of the rental arrangements through which the policy was made applicable to persons renting the car.
When Stewart applied to Econo-Car of Jersey City to rent the car he stated to its representative that he was a licensed driver and then exhibited his 1965 New Jersey driver's license. The representative requested additional information, on the basis of which she filled in certain spaces on the application card and he completed others. This card makes no reference to the name of the lessor. On one side appears Stewart's name and incidental information relating to his employment and personal description. At the foot *357 of the card, just above Stewart's signature, appears the following:
The foregoing representations are made under the pains and penalties of perjury for the purpose of obtaining automobile rental service, and I will notify the company if I change my place of employment.
The other side of the card contains a number of boxes for additional information, but the only one filled out contains Stewart's New Jersey driver's license number and a notation of its expiration date as "1/66."
The only other document presented to Stewart consisted of a single sheet, the first page of which is entitled "Standard Rental Agreement" and contains terms and conditions of the rental.
On the top of the other side of the sheet (denominated "Page 2") there appears the legend, "Rental Agreement," followed by "Econo-Car International, Inc." (although the car was presumably intended to be rented by Econo-Car of Jersey City). This page consists of a form divided into two parts  one for use of the rental agency for the entry of information as to mileage, etc., and the other containing miscellaneous information to be supplied by the renter. None of this is pertinent here with the exception of a notation of Stewarts driver's license number and the expiration date, At the foot of the page is the printed statement, "This rental agreement subject to terms and conditions on reverse side (Page 1)." Below this statement appears Stewart's signature. His is the only signature on the document. No provision is made for execution anywhere on behalf of the lessor.
It becomes necessary now to describe the pertinent terms and conditions of the printed rental agreement form. After reciting that the lessor thereby leases the vehicle to the renter (including any additional renter signing the agreement), there follows in item (3):
RENTER AGREES THAT SAID VEHICLE SHALL NOT BE OPERATED * * * (e) by any person other than (1) the Renter or additional Renter who signed this agreement, (2) any employee *358 or employer of the Renter while used for business purposes of the Renter or (3) a driver for whom Lessor has given written consent, provided always that any such additional Renter, driver, employee or employer of the Renter must be 25 years of age and a qualified licensed driver * * *.
Item (5), which contains the only reference to insurance that appears anywhere in the document (or elsewhere), provided, in pertinent part:
Renter participates as an insured in the benefits of automobile bodily injury and property damage liability insurance and is bound by and agrees to the terms, conditions, limitations, and restrictions thereof even though all of them are not outlined herein. Such insurance provides bodily injury or death liability limits of at least $100,000 for each person in each accident, and subject to the foregoing limitation $300,000 limits for all persons in each accident, and property damage liability limits to $25,000 for each accident. * * *
In item (5) the renter further agrees, among other things, that the insurance does not cover liability imposed or assumed by an insured under any workmen's compensation law or any contract of any nature. It also requires the prompt reporting of accidents and obliges the renter or driver to deliver to the Econo-Car station from which the vehicle is rented, or to the lessor's insurer as soon as practicable, any legal process received by the renter or driver relating to claims or suits.
So far as the record discloses, neither Econo-Car of Jersey City, nor anyone else, provided Stewart with a copy of the blanket insurance policy or any further description of its provisions, or even the name of the company which issued the policy.
The introductory language of the filed policy follows standard policy phraseology that the insurer
* * * [a]grees with the insured, named in the declarations made a part hereof * * * [t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of the bodily injury, sickness or disease * * * sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile. *359 Through an endorsement the insurance is also made specifically applicable to the rentee as an insured. The particular assureds named in the declaration are Chrysler Leasing Corp. and various other sublessees or affiliates and dealers.
We turn, then, to the omnibus provision of the policy, which provides as follows:
III. Definition of Insured: (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word "insured" includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either. * * *
The omnibus clause extends the insurance coverage, not only to Stewart as an assured, but also as to any person using the automobile with the permission of the named insured. Stewart, as the rentee and as an assured, of course had the permission of a named assured under the rental agreement to operate the car. But he was not given authority to permit Williams to drive the car by the named assureds. In fact, in permitting Williams to operate the vehicle he literally violated the terms of the rental agreement  this despite the fact that Stewart was riding in the automobile with the permittee.
The next inquiry, therefore, is whether the driver of the car and the injured passengers were deprived of protection under the policy because, at the time the accident happened, it was not being driven by one who had received permission of the original named insured. We think not.
A liability insurance contract is for the benefit of the public as well as for the benefit of the named or additional insured. Odolecki v. Hartford Accident & Indemnity Co., 55 N.J. 542, 549 (1970). The Legislature has implemented this public policy by assuring an available fund for the innocent victims of automobile accidents. See Motor Vehicle Security Responsibility Law, N.J.S.A. 39:6-23 to 60; *360 Unsatisfied Claim and Judgment Fund Law, N.J.S.A. 39:6-61 to 91; Motor Vehicle Liability Security Fund Act, N.J.S.A. 39:6-92 to 104.
Accordingly, our Supreme Court, in Mattis v. Nationwide Ins. Co., 33 N.J. 488, 497 (1960), held that if a person is given permission to use a motor vehicle in the first instance, any subsequent use, though not within the contemplation of the parties, is a permissive use within the standard omnibus clause in an automobile liability insurance policy.
This holding was reaffirmed in Small v. Schuncke, 42 N.J. 407 (1964) and Selected Risks Ins. Co. v. Zullo, 48 N.J. 362 (1966). In the latter case the Supreme Court discussed the financial responsibility laws cited above and indicated that their import was to assure that all persons wrongfully injured by motor vehicles would have financially responsible persons to look to for damages, and that persons registering motor vehicles provide such financial responsibility by automobile liability insurance. 48 N.J. at 368. Consequently, it held that an insurer could not depart from the omnibus coverage described in N.J.S.A. 39:6-46(a) and, therefore, policies issued by it must conform to the "initial permission" rule.
In Odolecki v. Hartford Accident & Indemnity Co., supra, the Supreme Court, in accord with the above policy consideration, extended the initial permission rule to prohibited second permittees as well as prohibited uses:
We fail * * * to see the distinction between a case where a first permittee exceeds the scope of permission in terms of time, place, or purpose, and a case where he exceeds the scope of permission in terms of use of the vehicle by another. Once an owner voluntarily hands over the keys to his car, the extent of permission he actually grants is as irrelevant in the one case as in the other. * * * [at 549-550]
The reasoning in these cases applies equally as well to the situation before us. In harmony with the financial responsibility laws cited above, the Legislature has indicated its desire *361 to assure compensation to the innocent victims of negligently driven automoblies for rent as well as those in private use. N.J.S.A. 45:21-1 et seq. In light of this policy there appears to be no reason to distinguish the lessor of a rented automobile from one who loans his private car in determining liability for injuries resulting from operation of his automobile beyond the scope of his initial permission. Certainly this result must obtain where the filed policy contains a standard omnibus provision of the kind giving rise to this expression of public policy.
It will be recalled that Stewart is not a party to this proceeding. It is therefore not necessary to consider here the effect, if any, which breach of the terms of the rental agreement by Stewart may have upon the coverage extended to him as an insured. Cf. Allstate Ins. Co. v. Vincent Meloni, 98 N.J. Super. 154 (App. Div. 1967).
We turn to whether the statements made by Stewart at the time of the rental, that he was a licensed driver of New Jersey and that no one else would drive the automobile, were misrepresentations voiding the policy. In general, a misrepresentation by the insured, whether contained in the policy itself or in the application for insuarnce, will support a forfeiture of the insured's rights under the policy if it is untruthful, material to the particular risk assumed by the insurer, and reasonably relied upon by the insurer issuing the policy. Merchants Indemnity Corp. of New York v. Eggleston, 68 N.J. Super. 235, 244 (App. Div. 1961), aff'd 37 N.J. 114 (1962); Allstate Ins. Co. v. Meloni, 98 N.J. Super. 154, 158 (App. Div. 1967).
It is not disputed that Stewart's statement that he was a licensed driver was in fact untrue. It was thus a misrepresentation and, though not knowingly false, would ordinarily under the prevailing view constitute a basis for voiding the policy. See 43 Am. Jur.2d, Insurance, § 397 et seq. (1969), and see Annotation, "Materiality of false statements by applicant for automobile insurance as to license revocations or suspensions or traffic violations," 89 *362 A.L.R.2d 1027 (1963). But see Johnson v. Metropolitan Life Ins. Co., 53 N.J. 423 (1969), as to the effect of innocent misrepresentations in a life insurance policy.
Stewart's statement concerning the operation of the car by others is of somewhat different nature. That statement was promissory in character and related to future acts on the part of the insured. It was therefore not, correctly speaking, a misrepresentation of fact, but merely an expression of future intention. Some courts, however, have treated both types of statements as having essentially the same effect, although the reasoning by which they arrive at that conclusion is not entirely clear. See 43 Am. Jur.2d, Insurance, § 397 et seq. (1969), and 7 Am Jur.2d, Automobile Insurance, § 14 et seq. (1963).
Defendant's theory is that Stewart, as the prospective assured, made these statements to the rental concern as agent for the insurance company, thereby inducing execution of the rental agreement and the issuance of the insurance. The argument proceeds that the rental agreement and the application form a part of the insurance policy.
We see no reason why the lessor of a rented car may not be considered an agent for such purposes or why representations made to it for the purpose of procuring the issuance of an insurance policy or as a condition for providing coverage under an existing one should not be treated in the same fashion as those made directly to the insurance carrier. See 7 Appleman, Insurance Law and Practice, § 4453 at 484 (Bd. Supp. 1972). However, the question remains as to whether Stewart, the prospective assured, knew or reasonably could be expected to know that any statements made by him in conjunction with the rental arrangement might affect the validity of the insurance provided for his benefit and that of third persons.
Here the rentee appears neither to have seen the policy or a copy of it, nor to have been informed of the pertinent provisions of the policy or even of the name of the company. As we have noted above, the only reference to the existence *363 of insurance at all is the recital in the rental agreement that the rentee is entitled to the benefits of insurance and will be bound by its terms notwithstanding they are "not outlined in the agreement."
The rental documents contain nothing which indicates that the statements incorporated therein constitute representations of the insurance policy or for any other purpose. In this regard, we note that the only statements labeled as representations were at the foot of the application form and related only to the applicant's residence and employment or personal details descriptive of the applicant. The only consequence mentioned for violation of these representations was that the applicant subjected himself to the penalties of perjury.
Under these circumstances it is extremely doubtful that these statements should be considered as misrepresentations sufficient to void the policy. In arriving at such conclusion we are mindful of the general rule that ambiguities in an insurance policy (if the rental documents are to be considered as a part of the insurance policy) must be resolved against the insurer. Bryan Const. Co. v. Employers' Surplus Lines Ins. Co., 60 N.J. 375 (1972). This conclusion would seem to be especially applicable where, as here, the insurer seeks to void the policy, not as between the insurance company and the rentee as an assured, but as to innocent third persons.
Even assuming that the statements in question constituted misrepresentations which would otherwise render the insurance void ab initio, that result is precluded here by the mandatory requirements of the statute, N.J.S.A. 45:21-1 et seq. Section 3 thereof provides that the policy required to be filed
* * * contain a provision for a continuing liability thereunder, subject to the aforesaid limits of liability, notwithstanding any recovery thereon, and shall further provide that nothing contained therein, nor the violation of any of the provisions thereof, shall relieve the insurer, within the limit of liability aforesaid, from the *364 payment of any such judgment; but this provision shall not, as between the insurer and the assured, affect the rights given by the policy to the insurers against the assured because of any such violation or otherwise. * * *
Section 7 provides for the cancellation of policies filed under the statute pursuant to the terms of such policies, but only as to accidents occurring subsequent to the effective date of cancellation.
As the author states in 7 Am. Jur.2d, Automobile Insurance, § 9 at 303 (1963),
It has been universally held or recognized that an insurer cannot, on the ground of fraud or misrepresentations relating to the inception of the policy, retrospectively avoid coverage under a compulsory or financial responsibility insurance law so as to escape liability to a third party. * * *
See Annotation, "Rescission or avoidance, for fraud or misrepresentation, of compulsory, financial responsibility, or assigned risk automobile insurance," 83 A.L.R.2d 1104 (1962).
We see no valid reason why this general principle should not be applicable to insurance policies filed pursuant to the mandatory requirements of N.J.S.A. 45:21-1 et seq. Similar considerations apply. Cf. Atlantic National Ins. Co. v. Armstrong, 65 Cal.2d 100, 52 Cal. Rptr. 569, 416 P.2d 801 (Sup. Ct. 1966).
We see no substance in the argument that the injured passengers were barred from recovery because they were occupants of the car and as such did not come within the class of persons whom the policy of the statute was intended to protect. They were persons for whom protection was provided in the policy. Since the policy was filed pursuant to the statute, it was noncancellable after the accident had occurred as to such injured parties. The fact that the coverage provided under the policy extends protection to them broader in scope than the statutory minimum does not, as we see it, provide any ground for making the noncancellability provision inapplicable.
*365 Moreover, the assumption that occupants of rented cars as a class are denied benefits appears wholly unfounded. N.J.S.A. 45:21-2 requires the car owner to file a policy of insurance
* * * insuring such owner against loss from the liability imposed by law upon such owner for damages on account of bodily injury or death suffered by any person other than a person in the employ of such owner, or a person in, on or about such motor vehicle in the status of a driver, passenger for hire or occupant * * *. [Emphasis added]
Thus, occupants are included in the category of persons denied the protection under the statute as against the owner.
The following section (N.J.S.A. 45:21-3) requires that such policy "shall provide for the payment * * * of any final judgment recovered by any person on account of the ownership, maintenance and use of such motor vehicle by either the owner or the lessee or bailee, his agent or servant * * *." (Emphasis added). Therefore, the statute does not preclude recovery under its required insurance policy by the occupants of a rented automobile against a negligent rentee or one driving with his permission.[1] See 7 Appleman, Insurance Law and Practice, § 4453 at 484 (Bd. Supp. 1972), *366 for a discussion of cases involving the rights of occupants of rented vehicles against drivers under different policy or statutory language.
Reversed.
NOTES
[1] This interpretation is confirmed by the legislative history of the car rental statute. The word "occupant" first appears in the 1930 amendment (L. 1930, c. 30, p. 326). The prefatory statement to that act recites:

The purpose of this act is to correct a slight defect in the amendatory act passed in 1929 and to make the compulsory insurance of U-Drive cars more practical in serving its original purpose of affording protection to persons injured by irresponsible drivers of such cars. This amendment puts teeth into the act of 1926 which was rendered practically useless by the amendments of 1927 and 1928.
See McLeary v. Maryland Casualty Co., 109 N.J.L. 244 (E. & A. 1932), for what seems a dubious interpretation of the effect of this amendment on the right of passengers to recover against the rentee of the car.