224 N.J. Super. 552 (1988)
540 A.2d 1334
CAROL W. FISHER, PLAINTIFF-APPELLANT,
v.
NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, BY AND THROUGH ITS SERVICING CARRIER, HANOVER INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted November 10, 1987.
Decided April 27, 1988.
*553 Before Judges MICHELS, SHEBELL and GAYNOR.
Donio, Bertman, Johnson, Sahli & Greco, attorneys for appellant (Keith A. Bonchi, on the brief).
Montano, Summers, Mullen, Manuel & Owens, attorneys for respondent (James A. Nolan, Jr., on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiff Carol W. Fisher appeals from a summary judgment of the Law Division entered in favor of defendant New Jersey Automobile Full Insurance Underwriting Association, by and through its servicing carrier, Hanover Insurance Company in this action seeking personal injury protection (PIP) benefits under an automobile insurance policy issued to Thomas Lafferty.
The facts giving rise to this appeal are not in dispute. On or about April 8, 1985, Thomas Lafferty (Lafferty) went to the Apco Insurance Agency (Apco) in Williamstown, New Jersey to purchase automobile insurance through the New Jersey Automobile Full Insurance Underwriting Association (Association), an unincorporated, non-profit association created pursuant to N.J.S.A. 17:30E-1 et seq. "to provide automobile insurance *554 (through normal market outlets at standard market rates) for qualified applicants who cannot otherwise obtain insurance." N.J.S.A. 17:30E-2. Apco is a producer authorized to issue automobile insurance on behalf of the Association. In order to obtain coverage through the Association, Lafferty was required to fill out an application which Apco then sent to Hanover Insurance Company (Hanover), the participating carrier.
Under the space provided in the application for "Description of Vehicles", Lafferty indicated that the vehicle to be insured was a 1976 Ford Granada, bearing Vehicle Identification Number 6E81L114. Significantly, Lafferty also indicated that the vehicle was registered in New Jersey under license plate number "381SAN". In the "Applicant's Statement" located directly above the line where Lafferty signed his name, the following language is found:
I declare and certify that: (1) I have tried and failed to obtain automobile insurance in this state within the preceding 60 days at rates not exceeding those applicable under the Association. (2) To the best of my knowledge and belief that all statements contained in this application are true and that these statements are offered as an inducement to the Servicing Carrier on behalf of the Association to issue the policy for which I am applying. (3) I realize that any misleading information or failure to disclose required information will be considered lack of good faith on my part and may void the application or cause cancellation of my coverage.
After receiving this application, along with the required premium, Hanover determined Lafferty to be a "qualified applicant" under N.J.S.A. 17:30E-3m and issued policy number NJA-226097-40 on behalf of the Association pursuant to N.J.S.A. 17:30E-9.
On May 21, 1985, plaintiff was a passenger in the Lafferty vehicle, which was operated by Laurie M. Praul, when an intersection collision occurred with another automobile. Praul was issued three traffic summons, two of which were for driving an unregistered vehicle contrary to N.J.S.A. 39:3-4 and using fictitious license plates contrary to N.J.S.A. 39:3-33. As a result of the accident, plaintiff sustained injuries resulting in medical bills in excess of $20,000. Since plaintiff did not have *555 automobile insurance coverage in her household, she applied for personal injury protection (PIP) benefits under the Hanover policy issued to Lafferty on behalf of the Association. An investigation was conducted by Hanover claims representative Kenneth Moses. According to Moses' affidavit, and a Certified Abstract received from the Division of Motor Vehicles, no vehicle with license plate No. 381SAN was registered at that time or at the time of the accident. Moses was advised also by Lafferty "that he had never registered the 1976 Granada in New Jersey and that the license plates on the vehicle were registered to another vehicle owned by him two years previous." As a result, Hanover sent Lafferty a letter advising him that his policy was deemed void ab initio since he failed to register his vehicle as required by N.J.S.A. 17:30E-3m in order to be considered a qualified applicant under the plan. Hanover returned Lafferty's premium and denied plaintiff's claim for PIP benefits under its insurance policy.
Plaintiff thereupon instituted this action to recover all PIP-related expenses under the policy of insurance issued by Hanover as the servicing carrier for the Association. She claimed that as an injured third party, she should not be precluded from claiming PIP benefits under the New Jersey Automobile Reparation Reform Act, commonly referred to as the "No-Fault Law", N.J.S.A. 39:6A-1 et seq., simply because Lafferty  the insured  failed to meet the eligibility requirements set forth in N.J.S.A. 17:30E-3m. The trial court held that the "insurance policy was voided because the applicant [Lafferty] failed to register his vehicle, instead driving it with fictitious license plates, thereby rendering him an unqualified applicant for insurance. N.J.S.A. 17:30E-3(m)" and granted summary judgment in favor of defendant. This appeal followed.
The New Jersey Automobile Full Insurance Availability Act, N.J.S.A. 17:30E-1 et seq., which became operative on January 1, 1984, was enacted:

*556 to assure to the New Jersey insurance consumer full access to automobile insurance through normal market outlets at standard market rates, to encourage the use of available market facilities, to provide automobile insurance for qualified applicants who cannot otherwise obtain such insurance through a full automobile insurance underwriting association, and to require that companies be made whole for losses in excess of regulated rates on all risks not voluntarily written by providing procedures for the spreading and recoupment of losses based on actual experience. [N.J.S.A. 17:30E-2].
Under N.J.S.A. 17:30E-9a, "[a]ny qualified applicant shall be entitled to apply for insurance coverage available pursuant to section 27 [N.J.S.A. 17:30E-15] of this act." Under N.J.S.A. 17:30E-15, "[a] qualified applicant who is eligible for coverage through the association shall be offered and entitled to coverage up to at least the following limits: ... f. personal injury protection coverage as required by law." Since N.J.S.A. 39:6A-4 extends PIP coverage to "persons sustaining bodily injury while occupying ... the automobile of the named insured", it is undisputed that if Lafferty was a "qualified applicant" under N.J.S.A. 17:30E-1 et seq., then plaintiff would have been able to collect PIP benefits from the Association through Hanover, the servicing carrier.
It is evident, however, that at no time during the period of coverage from April 8, 1985, the date when the application was executed by Lafferty and Apco, until November 24, 1985, the date Hanover rescinded the policy and returned Lafferty's premium payment, was Lafferty ever a "qualified applicant" for insurance with the Association. N.J.S.A. 17:30E-3m defines "qualified applicant" as follows:
m. "Qualified applicant" means a person domiciled in New Jersey who is an owner of an automobile registered, or to be registered within 60 days of application, and principally garaged in this State,... No person shall, however, be deemed a qualified applicant, if the principal operator of the automobile to be insured does not hold a driver's license which is valid in this State; or if a regular operator of the automobile other than the principal operator does not hold such a license; or if timely payment of premium is not tendered; of if the principal operator of the automobile does not furnish the information necessary to effect insurance; or if such person rents or leases automobiles to others or automobiles which are used for commercial purposes. [Emphasis added].
Despite the representations made by Lafferty in his application, the vehicle in which plaintiff was riding when the accident *557 occurred was not registered in New Jersey. Thus, Lafferty was not eligible for insurance through the Association and the insurance policy issued to him based on the material misrepresentations was void ab initio.
However, even though Lafferty's misrepresentations may have rendered the insurance policy void ab initio as to him, we hold that Hanover cannot now avoid liability to plaintiff for PIP coverage by declaring the insurance policy null and void after the accident.
Our No-Fault Law requires that every owner or registered owner of an automobile registered or principally garaged in this State maintain automobile liability insurance coverage insuring against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of an automobile. N.J.S.A. 39:6A-3. One of the purposes of the No-Fault Law is to afford reparation for objectively provable economic losses resulting from automobile accidents. In particular, N.J.S.A. 39:6A-4 requires prompt payment of medical and other expenses to certain claims of persons injured in automobile accidents without regard to fault and without having to await the outcome of protracted litigation. This is social legislation designed to give the broadest protection to automobile accident victims consistent with the language of its pertinent provisions. Amiano v. Ohio Cas. Ins. Co., 85 N.J. 85, 90 (1981); N.J.S.A. 39:6A-16.
It is abundantly clear that the beneficiaries of our No-Fault Law and the insurance policies issued in compliance therewith, including the Hanover policy issued to Lafferty pursuant to the New Jersey Automobile Full Insurance Availability Act, are members of the public who, like plaintiff, may be injured in an automobile accident. The insurance carrier's liability to its assured who may be guilty of some act or conduct which renders a policy void ab initio is therefore distinct from its liability to an injured third person. Our courts have recognized the distinction between the two and have refused to declare *558 automobile insurance policies void as to injured third parties where the assured has breached a warranty or condition precedent to the policy. See Atlantic Cas. Ins. Co. v. Bingham, 10 N.J. 460, 465-467 (1952); Williams v. American Home Assur. Co., et al., 121 N.J. Super. 351, 363-365 (App.Div. 1972), certif. den. 62 N.J. 260 (1973); State Farm Mut. Auto. Ins. Co. v. Wall, 92 N.J. Super. 92, 103-104 (App.Div. 1966); Ambrose v. Indemnity Insurance Co. of N.A., 120 N.J.L. 248, 251 (E. & A. 1938); Woloshin v. "The Century Indemnity Co.", 116 N.J.L. 577, 579 (Sup.Ct. 1936); United States Casualty Co. v. Timmerman, 118 N.J. Eq. 563, 569-570 (Ch. Div. 1935).
Although these cases may be distinguishable insofar as they all relied upon existing financial responsibility or compulsory insurance laws which expressly precluded insurers from denying coverage subsequent to the occurrence of an accident, see N.J.S.A. 39:6-48(a); N.J.S.A. 45:21-3 (concerning motor vehicle rentals), and there is no corresponding legislation in N.J.S.A. 17:30E-1 et seq., the same underlying policy considerations compel the result we reach here today. The Association "was established by the Legislature in 1983 to supplant the Assigned Risk Plan for private passenger vehicles." Senate Labor, Industry and Professions Committee Statement Senate No. 2790  L. 1986, c. 211. Since the Association allows drivers who have been classified as risks to obtain insurance at an affordable rate and to continue to drive on our roads, the public is entitled to an equal, if not greater, degree of personal injury protection than as against safe drivers who are not subject to the provisions of N.J.S.A. 17:30E-1 et seq.
"[I]t has been universally held or recognized that an insurer cannot, on the ground of fraud or misrepresentations relating to the inception of the policy, retrospectively avoid coverage under a compulsory or financial responsibility insurance law so as to escape liability to a third party." 7 Am.Jur.2d, Automobile Insurance § 37, p. 493 (1980); Accord, Annot., "Rescission or avoidance, for fraud or misrepresentation, of compulsory, financial responsibility or assigned risk automobile insurance", *559 83 A.L.R.2d 1104, 1105-1106 (1962); State Farm Mut. Auto. Ins. Co. v. Kurylowicz, 67 Mich. App. 568, 242 N.W.2d 530, 533-535 (Mich. Ct. App. 1976); Sentry Indem. Co. v. Sharif, 248 Ga. 395, 282 S.E.2d 907, 908 (Ga. 1981); Rauch v. American Family Ins. Co., 115 Wis.2d 257, 340 N.W.2d 478, 482-483 (Wis. 1983); Teeter v. Allstate Ins. Co., 9 A.D.2d 176, 192 N.Y.S.2d 610, 615-619 (N.Y. App. Div. 1959), aff'd 9 N.Y.2d 655, 212 N.Y.S.2d 71, 173 N.E.2d 47 (N.Y. 1961). Cf. Fellippello v. Allstate Ins. Co., 172 N.J. Super. 249, 258 (App.Div. 1979); Contra, Glockel v. State Farm Mut. Auto. Ins. Co., 224 Neb. 598, 400 N.W.2d 250, 257-259 (Neb. 1987). Since PIP coverage is compulsory for any automobile "registered or principally garaged in this State" N.J.S.A. 39:6A-3 (Emphasis added); N.J.S.A. 39:6A-4, neither Lafferty's failure to register the car, which was principally garaged in New Jersey, nor his subsequent misrepresentation would preclude plaintiff's right of recovery. To hold otherwise and allow the insurer to declare a compulsory automobile liability insurance policy void ab initio after a third party is injured simply because the insured was not a qualified Association applicant would undermine the legislative purpose of our No-Fault Law.
Accordingly, the judgment under review is reversed.