277 N.J. Super. 448 (1994)
650 A.2d 1
CHRISTINE DILLARD, PLAINTIFF-RESPONDENT,
v.
HERTZ CLAIM MANAGEMENT AND/OR EDS SYSTEMS, AS SERVICING AGENT FOR THE NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION (NJAFIUA), DEFENDANTS, AND NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION (NJAFIUA), DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 3, 1994.
Decided November 22, 1994.
*449 Before Judges DREIER and VILLANUEVA.
Gebhardt & Kiefer, attorneys for appellant (Robert G. Englehart, of counsel and on the brief).
Raymond T. Sheldon, attorney for respondent (Mr. Sheldon, of counsel and on the brief).
The opinion of the court was delivered by VILLANUEVA, J.A.D.
Defendant, New Jersey Automobile Full Insurance Underwriting Association (NJAFIUA), appeals from a declaratory judgment holding it liable for benefits payable to plaintiff Christine Dillard. Plaintiff was injured while a passenger in a car operated by Deborah Dillard, which was struck by a car operated by Esther Kim. Deborah's car had been uninsured and unregistered for the year prior to the accident. However, just prior to the accident, Deborah had applied for insurance through a servicing agent for NJAFIUA and paid for such insurance by a check that was later dishonored for insufficient funds. When the defendant/insurer discovered this dishonor after the accident, it retroactively revoked the policy.
The issue in this case is whether that retroactive revocation affects the rights of the third party plaintiff/passenger.
*450 Plaintiff filed a complaint for damages against her sister, Deborah Dillard, and Esther Kim. Plaintiff also sought benefits from the Unsatisfied Claim and Judgment Fund (UCJF).
Plaintiff then brought this declaratory judgment action against Hertz Claim Management and/or EDS Systems, as servicing agent for the New Jersey Automobile Full Insurance Underwriting Association (NJAFIUA). NJAFIUA's motion to dismiss the complaint against Hertz Claim Management and EDS Systems was granted.
At a bench trial, based upon stipulated facts, the trial judge found in favor of plaintiff, concluding:
I find that the voidance [of the policy] does not apply to the passenger who's an innocent third party, and therefore she's entitled to PIP coverage, and she's entitled to make a claim against her driver for liability which she has and any verdict in her favor must be paid by the defendant carrier, and she also has a right to make a claim under the UM coverage because I understand the Kim car was not insured...
On appeal, defendant argues that under the terms of the application for insurance executed by Deborah Dillard, the insurance contract never went into effect and therefore no policy existed to provide any benefits. It is true that the applicant's statement on the NJAFIUA application includes the following statement: "I agree that no coverage will be in effect if my premium remittance, which accompanies the application and is forwarded to the servicing carrier, is justifiably dishonored by the financial institution." However, that disclaimer does not necessarily preclude actions on the policy by innocent third parties.
The distinction between first and third party claims against a canceled or void policy is of critical importance in determining whether coverage is afforded. In Tucker v. Allstate Insurance Co., 195 N.J. Super. 230, 478 A.2d 1220 (App.Div. 1984), plaintiff was the named insured under a new policy written by a private insurer, but had written a "bum check" to his agent. Id. at 232, 478 A.2d 1220. Notwithstanding the fact that plaintiff had not received a notice of cancellation prior to the accident, we held that plaintiff had no coverage for payment of his medical bills. Id. at *451 233-34, 478 A.2d 1220. However, we specifically noted that this ruling was only as to first party claims:
Here we are only concerned with the rights of Tucker to make a first-party claim under the alleged contract of insurance with MCA [a co-insurer with Allstate] for which he never paid any premium and which was never physically issued to him. Even MCA concedes in its brief that if the insurance identification card issued to Tucker at the time he filled out the application had been used to register his car and an innocent third party had been injured it would have afforded coverage even though the premium was never paid.
[Ibid.]
Plaintiff is just such an innocent third party.
N.J.S.A. 39:6-23 et seq., the Financial Responsibility Act,[1] was adopted to "forbid the use of roads to certain persons unless they were able to respond to damages in case they caused injury to others." Atlantic Casualty Insurance Co. v. Bingham, 10 N.J. 460, 465, 92 A.2d 1 (1952) (citing U.S. Casualty Co. v. Timmerman, 118 N.J. Eq. 563, 180 A. 629 (Ch. 1935)). Specifically, N.J.S.A. 39:6-48(a) specifies that once loss or damage occurs under the policy, the liability of the insurer becomes absolute. "No such policy shall be canceled or annulled as respects any loss or damage by any agreement between the carrier and the insured after the insured has become responsible for the loss or damage and any such cancellation or annulment shall be void."
In Williams v. American Home Assur. Co., 121 N.J. Super. 351, 297 A.2d 193 (App.Div. 1972), we reiterated that:
It has been universally held or recognized that an insurer cannot, on the ground of fraud or misrepresentations relating to the inception of the policy, retrospectively avoid coverage under a compulsory or financial responsibility insurance law so as to escape liability to a third party * * *
[Id. at 364, 297 A.2d 193 (quoting 7 Am.Jur.2d Automobile Insurance § 9 at 303 (1963))].
Notwithstanding the fact that there is no corresponding provision establishing a financial responsibility law in the enabling *452 legislation establishing the New Jersey Automobile Full Insurance Underwriting Association (N.J.S.A. 17:30E-1, et seq.), this general rule has been followed in New Jersey when the innocent third party seeks to recover from the canceling NJAFIUA insurer. Fisher v. New Jersey Automobile Full Insurance Underwriting Ass'n, 224 N.J. Super. 552, 557, 540 A.2d 1344 (App.Div. 1988). "Since the Association allows drivers who have been classified as risks to obtain insurance at an affordable rate and to continue to drive on our roads, the public is entitled to an equal, if not greater, degree of personal injury protection than as against safe drivers who are not subject to the provisions of N.J.S.A. 17:30E-1 et seq.". Id. at 558, 540 A.2d 1344.
Defendant argues that Fisher, supra, should not be "extended" to the facts of this case to include coverage for compensatory damages and uninsured motorists benefits. However, we see no reason to distinguish Fisher where the insured was not a "qualified applicant" and this case where the "insured" issued a bad check for the premium.
In Atlantic Casualty Insurance Co., supra, the defendant Bingham was the owner and operator of a motor vehicle that collided with a taxi owned by Donnelly, injuring taxi passengers Clarkin and Zukotynski. When Bingham applied for his policy, he denied that he had any prior accidents. Ibid. After this accident, his insurer determined that he had in fact had prior accidents and prior policies had been canceled as a result thereof. Ibid. Therefore, the insurer sought to cancel the policy, ab initio. Ibid. The Court held that the Financial Responsibility Act prevented the cancellation, and coverage was accordingly provided to pay for the repair of the taxi and to compensate the injured. Id. at 465, 92 A.2d 1. Thus, compensatory damages for both property damage and bodily injury were paid, notwithstanding the fact that the policy was declared void ab initio.
In State Farm Mutual Insurance Co. v. Wall, 92 N.J. Super. 92, 94, 222 A.2d 282 (App.Div. 1966), the insurer sought rescission against its insured for fraudulent misrepresentations on his application. *453 We held that the policy was noncancellable as to injured third party claimants by virtue of the above quoted statute. Id. at 103, 222 A.2d 282. Again, compensatory damages were payable by an insurer to satisfy claims against an insured whose policy was canceled or void.
Likewise, uninsured motorists benefits are not excluded from coverage. New Jersey courts have stated that the legislative purpose of the uninsured motorists statute, N.J.S.A. 17:28-1.1, "is to relieve the Unsatisfied Claim and Judgment Fund from the financial burden of meeting the growing number of claims being made against the Fund." Beek v. Ohio Casualty, 127 N.J. Super. 187, 194, 316 A.2d 726 (Ch.Div. 1974), rev'd 135 N.J. Super. 1, 342 A.2d 547 (App.Div. 1975), aff'd o.b. 73 N.J. 185, 373 A.2d 654 (1977).
As we stated in Fisher, supra, our decision merely provided the same degree of protection to members of the general public which has always existed, even where the policy in question was issued by the NJAFIUA. Id., 224 N.J. Super. at 557-58, 540 A.2d 1344. The trial court did nothing more than apply existing law to a situation involving a NJAFIUA policy. As such, the decision did not extend the ruling of Fisher, supra, but was consistent therewith. We see no reason to distinguish between a private insurer and the NJAFIUA.
One issue not addressed in Fisher is the effect of the Legislature's enactment of the statute creating the Unsatisfied Claim and Judgment Fund, N.J.S.A. 39:6-60, et seq. NJAFIUA argues that that statute creates a fund which would fully compensate plaintiff for her injuries and the same is true in Fisher. That coincidence begs the question. Defendant's assertion that plaintiff has a claim against the UCJF is irrelevant to the disposition of this case. The UCJF would merely provide supplemental relief.
The fact that the Legislature created this assigned risk carrier with the knowledge that its previous creation, the UCJF, provides a fund to protect people injured by uninsured drivers does not imply that prohibiting post-loss voidance, particularly when "innocent *454 third parties" are fully protected by the UCJF, is contrary to the legislative intent.
We are cognizant of the unfairness to a carrier which is held liable to a third party on a policy for which it has received no payment because of the putative insured's non-payment, caused by fraud or otherwise. The carrier, however, was not without a preventative solution. It could have required payment by cash, money order, certified or bank check or credit card. It chose, however, to accept an uncertified check in this case and, therefore, must suffer the same consequences as any merchant who sells goods and is paid by a bad check. The carrier's remedies are against the defaulting applicant.
Affirmed.
NOTES
[1] N.J.S.A. 39:6-1 to -22 of this act was repealed by L. 1952, c. 173, p. 570, § 34 when the "Motor Vehicle Security-Responsibility Law" was adopted by L. 1952, c. 173, p. 548, § 1. See N.J.S.A. 39:6-23.