NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3358-15T2

WAYNE SAVAGE,

 Plaintiff-Appellant,

v.

PROGRESSIVE INSURANCE CO.,

 Defendant-Respondent,

and

A.T.

 Defendant.
____________________________________________

 Submitted July 13, 2017 – Decided July 27, 2017

 Before Judges Yannotti and Haas.

 On appeal from Superior Court of New Jersey,
 Law Division, Essex County, Docket No. L-4048-
 14.

 Wayne Savage, appellant pro se.

 Kent & McBride, P.C., attorneys for respondent
 (Bradley R. Lawrence, on the brief).

PER CURIAM

 Plaintiff Wayne Savage appeals from an order entered by the

Law Division on February 26, 2016, dismissing plaintiff's claims
against defendant Progressive Insurance Company (Progressive) with

prejudice. We affirm.

 We briefly summarize the relevant facts and procedural

history. On January 28, 2014, plaintiff filed a complaint in the

Special Civil Part against Progressive and a person we refer to

as A.T., asserting a claim under the Consumer Fraud Act (CFA),

N.J.S.A. 56:8-1 to -20, based on Progressive's alleged wrongful

rescission of an automobile insurance policy. Plaintiff claimed

he acquired the policy on December 10, 2013.

 It appears that plaintiff was in an automobile accident on

January 8, 2014. According to the complaint, a police officer

contacted Progressive to confirm that plaintiff had auto

insurance, but Progressive informed the officer that plaintiff did

not have coverage. Plaintiff sought treble damages pursuant to the

CFA.1

 Because plaintiff was seeking damages that exceed the

jurisdiction monetary limits of the Special Civil Part, the court

transferred the case to the Civil Part. Progressive then filed an

answer denying liability. The court later denied Progressive's

motion for summary judgment and conducted a bench trial in the

matter.

1
 The court later dismissed the complaint as to A.T. apparently
because the complaint was never served upon him.

 2 A-3358-15T2
 At the trial, plaintiff testified that on December 5, 2013,

he purchased a used Dodge automobile, and on December 10, 2013,

he went to Rallye Motors, another used car dealership, to arrange

for the purchase of automobile insurance. Plaintiff spoke with

A.T., an individual whom he knew at Rallye Motors. Plaintiff said

A.T. had previously assisted him in purchasing auto insurance for

his daughter. Plaintiff told A.T. he wanted the best coverage at

the lowest price.

 A.T. contacted Progressive and he gave plaintiff a quote for

coverage. Plaintiff agreed to purchase the coverage for a total

premium of $2700, which he would pay in installments. Plaintiff

said he gave A.T. $593 in cash. Plaintiff claimed he was supposed

to pay the remaining installments with electronic transfers of

money from an account. Plaintiff claimed A.T. gave him a receipt

but he could not produce it.

 Plaintiff testified that he had been living with his sister

in an apartment in Newark. Plaintiff was no longer living at that

location, but he was still receiving his mail there. He stated

that he had received a "welcome package" from Progressive, which

included a five-page application for insurance.

 The application stated that the policy was for the period

from December 10, 2013, to June 10, 2014, with a total premium of

$2967, which would be paid in five installments. The first

 3 A-3358-15T2
installment payment was $593.40. The application stated that the

initial payment had been received.

 The application indicated that the initial payment would be

made with funds transferred from a checking account, which was

identified by the last four digits of both the account and the

routing number. The application stated:

 This is to confirm the authorization you gave
 for your first installment payment to be made
 by [electronic funds transfer]. This
 authorization applies to your first
 installment only. After your first installment
 payment, we cannot withdraw funds from your
 checking account for future payments unless
 you provide us with another authorization. An
 authorization form is included in this
 package.

 In another section, the application form contained the

following statement:

 If I make my initial payment by electronic
 funds transfer, check, draft, or other
 remittance, the coverage afforded under this
 policy is conditioned on payment to the
 Company by the financial institution. If the
 transfer, check, draft, or other remittance
 is not honored by the financial institution,
 the Company shall be deemed not to have
 accepted the payment and this policy shall be
 void.

 On cross-examination, plaintiff again stated that he had

provided A.T. with cash for the first installment payment, but he

did not have a receipt for the payment. Plaintiff conceded that

 4 A-3358-15T2
he never mailed cash, a money order, or a check to Progressive.

He claimed that A.T. told him he sent the money to Progressive.

 Plaintiff acknowledged that a few days after he arranged for

coverage, he received a package of documents from Progressive but

he claimed he only read the first page. Plaintiff said he did not

read the page with the authorization of an electronic transfer of

funds from an account for the first payment.

 Progressive's attorney asked plaintiff whether he read the

part of the application form which states that if the initial

payment is not honored by a financial institution, the policy

"shall be void." Plaintiff said he read this part of the

application but claimed it did not apply to him because he had not

paid by check. Progressive's attorney asked plaintiff if he signed

and returned the application to Progressive, and he replied that

he could not recall but he "could have."

 Progressive's attorney then showed plaintiff a rescission

notice dated December 16, 2013. He acknowledged that his name and

policy number were on the notice, and the address was his mailing

address in Newark. Plaintiff also acknowledged that the police

officer had given him a ticket for failing to maintain auto

insurance. Plaintiff said he pled guilty to the charge and paid a

fine, but he was going to appeal if he succeeded in this case.

 5 A-3358-15T2
 Progressive presented testimony from Debra Henry (Henry), a

defense litigation specialist for the company. Ms. Henry was

responsible for investigating coverage disputes regarding auto

insurance policies. She reviewed plaintiff's file, including the

documents Progressive sent to plaintiff. Ms. Henry testified that

plaintiff had obtained a "direct policy," which means that a

Progressive agent did not arrange for the insurance.

 Ms. Henry said that in this case, someone had asked

Progressive for a price quote, an application was made, and the

company asked for payment information. She noted that Progressive

accepts payments from policyholders through a bank or financial

institution. Policyholders also may pay the company directly using

a check or credit card. Progressive does not, however, allow cash

payments for its policies. When the company receives banking

information, the company's customary practice is to generate and

mail policy documents to the customer.

 Ms. Henry further testified that in this case, the financial

institution had informed Progressive that plaintiff's payment had

been rejected. Progressive then issued a rescission notice dated

December 16, 2013, which the company mailed to plaintiff at his

Newark address. The notice stated that Progressive had rescinded

the policy.

 6 A-3358-15T2
 Ms. Henry explained Progressive's process for mailing its

notices. Progressive mails out notices regarding policies with

certain addresses and locations at the same time. The letters are

processed and a representative from the United States Postal

Service (USPS) comes to Progressive's mail facility in Cleveland,

and stamps the manifest, which constitutes a certified report of

the mailings. Thereafter, a postal worker picks up the mail. Ms.

Henry identified the rescission notice and said it was a true copy

of the notice mailed to plaintiff.

 The trial judge then permitted plaintiff and Progressive's

attorney to make closing arguments. Thereafter, the judge placed

an oral decision on the record. The judge noted that the basic

facts were essentially undisputed. The judge found that while

plaintiff claimed he paid A.T. cash for the first premium payment,

plaintiff did not have a receipt for the cash payment and

Progressive had no record of receiving that payment. The judge

noted that Progressive does not accept cash payments.

 The judge also noted that although plaintiff had authorized

an electronic transfer of funds for the first payment, the funds

had not been transferred. The judge found that because plaintiff

did not make the initial premium payment, Progressive properly

rescinded the policy. The judge also determined that Progressive

 7 A-3358-15T2
had complied with the requirements of N.J.S.A. 17:29C-10 by mailing

to plaintiff a notice stating that the policy had been rescinded.

 The judge memorialized his decision in an order of judgment

dated February 26, 2016, which dismissed plaintiff's claims

against Progressive with prejudice. This appeal followed.

 On appeal, plaintiff argues the trial court erred because:

(1) he had a valid receipt from Progressive stating it had received

his first installment payment; (2) he had a policy number and

valid policy at the time it was cancelled, and Progressive failed

to cancel the policy in accordance with the requirements of

N.J.S.A. 17:29C-10; (3) Progressive's witness presented no

evidence that an online transaction had taken place on December

10, 2013 (not raised below); (4) the trial judge did not remain

objective (not raised below); and (5) ambiguities in an insurance

policy should be resolved in favor of the insured (not raised

below).

 We note initially the factual findings of the trial judge,

sitting without a jury, are binding on appeal if supported by

sufficient credible evidence in the record. Rova Farms Resort,

Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974) (citing

N.J. Tpk. Auth. v. Sisselman, 106 N.J. Super. 358, 370 (App. Div.),

certif. denied, 54 N.J. 565 (1969)). Our deference to the trial

court's factual findings is especially appropriate "when the

 8 A-3358-15T2
evidence is largely testimonial and involves questions of

credibility." In re Return of Weapons to J.W.D., 149 N.J. 108, 117

(1997).

 However, we review the trial court's decision on a question

of law de novo. Allstate N.J. Ins. Co. v. Lajara, 222 N.J. 129,

139 (2015) (citing Farmers Mut. Fire Ins. Co. of Salem v. N.J.

Prop.-Liab. Ins. Guar. Ass'n, 215 N.J. 522, 535 (2013)). Therefore,

"[a] trial court's interpretation of the law and the legal

consequences that flow from established facts are not entitled to

any special deference." Manalapan Realty v. Twp. Comm., 140 N.J.

366, 378 (1995).

 We are convinced from our review of the record that there is

sufficient credible evidence in the record to support the trial

court's finding that Progressive validly rescinded the policy it

had issued to plaintiff on December 10, 2013. As the trial

testimony and documents admitted into evidence show, plaintiff

applied for a policy on December 10, 2013, but failed to make the

first premium payment. Therefore, Progressive properly rescinded

the policy.

 Plaintiff argues on appeal that he had a valid receipt from

Progressive, which indicated that he made the first installment

payment. Plaintiff claimed he provided A.T. with cash for the

first payment, but he presented no evidence to corroborate that

 9 A-3358-15T2
claim. Moreover, as Ms. Henry testified, Progressive does not

accept cash payments for its policies.

 Furthermore, the evidence shows that Progressive had issued

that receipt based on the policy application, which stated that

plaintiff would make the first payment by means of an electronic

transfer of funds from a specified checking account. Progressive

presented evidence showing that the financial institution did not

transfer the funds and the payment was not made. Therefore,

Progressive properly declared the policy void ab initio.

 The trial court's finding that Progressive acted properly by

rescinding the policy is supported by our decision in Tucker v.

Allstate Insurance Co., 195 N.J. Super. 230 (App. Div. 1984). In

that case, the plaintiff applied for auto insurance through an

agency, which submitted the application and its own check to the

insurer for the premium deposit. Id. at 232. The insurer received

the application and the check, which it deposited. Ibid.

 The coverage was to be retroactive to the date on which the

plaintiff signed the application. Ibid. The agent later advised

the insurer that the check that plaintiff had provided for the

premium had been returned for insufficient funds. Ibid. The insurer

declared the application null and void and rescinded coverage

retroactive to the date the coverage became effective. Ibid. We

held that the insurer "was within its rights" to declare the policy

 10 A-3358-15T2
void from its inception. Id. at 234. The same conclusion applies

here.

 Plaintiff also argues that Progressive failed to cancel the

policy in accordance with N.J.S.A. 17:29C-10. The statute

provides:

 No written notice of cancellation or of
 intention not to renew sent by an insurer to
 an insured in accordance with the provisions
 of an automobile insurance policy shall be
 effective unless a. (1) it is sent by
 certified mail or (2) at the time of the
 mailing of said notice, by regular mail, the
 insurer has obtained from the Post Office
 Department a date stamped proof of mailing
 showing the name and address of the insured
 and b. the insurer has retained a duplicate
 copy of the mailed notice which is certified
 to be a true copy.

 Here, Progressive did not cancel the policy. It declared the

policy void from its inception. See First Am. Title Ins. Co. v.

Lawson, 177 N.J. 125, 137 (2003) (finding that rescission of an

insurance policy by an insurer voids the agreement ab initio, and

treats it "as if it does not exist for any purpose"). Therefore,

the statute did not apply.

 Even if Progressive's action is deemed to be a cancellation

of the policy, the record supports the trial court's determination

that Progressive complied with the requirements in N.J.S.A.

17:29C-10. As noted, Ms. Henry testified that Progressive sent the

notice to plaintiff on December 16, 2013, as shown by the mailing

 11 A-3358-15T2
manifest, which listed his name and address and was date-stamped

by the USPS.

 Ms. Henry further testified that Progressive retained the

rescission notice in the ordinary course of its business. She

stated that the copy of the notice presented to the court was a

full and complete copy of the notice that Progressive sent to

plaintiff on December 16, 2013.

 We note that Progressive did not show that it created a

certification at the time it sent the notice to plaintiff, stating

that the duplicate was a true copy of the mailed notice. See Celino

v. Gen. Accident Ins., 211 N.J. Super. 538, 543 (App. Div. 1986)

(stating that the statute requires certification of the duplicate

as a true copy "contemporaneously" with the mailing of the

original). Even so, the trial judge properly found that Ms. Henry's

testimony and the documentary evidence established that

Progressive had retained a duplicate copy of the notice and that

the duplicate was, in fact, a true copy of the notice that

Progressive mailed to plaintiff on December 16, 2013.

 Plaintiff further argues for the first time on appeal that:

Progressive failed to show that an online transaction took place

on December 10, 2013; the trial judge did not remain objective;

and certain ambiguities in the policy should be resolved in his

favor.

 12 A-3358-15T2
 This court will not, however, consider arguments that were

not raised in the trial court "unless the questions so raised on

appeal go to the jurisdiction of the trial court or concern matters

of great public interest." Nieder v. Royal Indemn. Ins. Co., 62

N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer,

58 N.J. Super. 542, 548 (App. Div. 1959), certif. denied, 31 N.J.

554 (1960)). Because plaintiff's three additional arguments do not

concern the trial court's jurisdiction and are not of great public

interest, they will not be addressed.

 Affirmed.

 13 A-3358-15T2