814 A.2d 619

PALISADES SAFETY & INSURANCE ASSOCIATION, PLAINTIFF–
RESPONDENT, v. LEONEL BASTIEN AND PAULE BASTIEN,
DEFENDANTS–APPELLANTS, AND MARY LAROCHE, DE-
FENDANT.

Argued November 18, 2002—Decided January 29, 2003.

*Ramon Rubio* argued the cause for appellants (*Robert A. Lord,* attorney).

*Lawrence F. Citro* argued the cause for respondent (*Biancamano & DiStefano,* attorneys).

The opinion of the Court was delivered by

LaVECCHIA, J.

This appeal concerns entitlement to personal injury protection ("PIP") benefits pursuant to *N.J.S.A.* 39:6A–4. We are called on to consider whether a wife, who resides with her husband (the insured) but intentionally is not named on his policy of automobile liability insurance, may receive PIP benefits for injuries sustained while driving one of the insured vehicles. At issue is whether an insured's resident spouse is precluded from benefits when the insured lies to the insurer about his marital status and represents that there were no other persons of driving age residing in his household. The Appellate Division affirmed the trial court's grant

of summary judgment, denying benefits on the basis that a resident spouse is not entitled to receive minimal PIP coverage as an innocent injured third party under an automobile policy declared void *ab initio*. We now affirm.

## I.

The essential facts are undisputed. In November 1996, defendant Leonel Bastien ("Leonel") applied for automobile liability insurance from Palisades Safety & Insurance Company ("Palisades" or "the company"). The company's application required him to state his marital status and to list all household residents of driving age. Leonel falsely represented that he was single and the sole driver of the two vehicles he sought to insure. In fact, Leonel resided with his wife, Paule, who held a license to drive issued by the State of New York. Although the record does not indicate whether Paule knew of Leonel's misrepresentations to Palisades, we assume for purposes of this decision that she did not.

Based on the information that Leonel provided, Palisades issued a policy for an annual premium of $2201.00, which, according to the record, would have been more costly but for the misrepresentations. The policy contained the following provision:

MISREPRESENTATION: We do not provide coverage for any person who has knowingly concealed or misrepresented any material fact or circumstance related to this insurance:

1. At the time application was made; or

2. At any time during the policy period; or

3. In connection with the presentation or settlement of a claim.

Over the course of the next eight months, Leonel twice submitted required documents to Palisades, each time continuing the misrepresentation that he was the sole licensed driver and household resident over the age of sixteen. Later, in July 1997, he added coverage for a third car (a Mazda), premised on the same false information.

On October 3, 1997, Paule was involved in an accident while driving the Mazda. Both she and her passenger (her mother, Mary LaRoche ("LaRoche")) were injured. Each filed a claim for PIP benefits under Leonel's policy. In response, Palisades commenced this declaratory judgment action to declare the policy void *ab initio* and avoid any PIP liability for Paule as an additional insured under the policy. The action also sought to limit La-Roche's third-party PIP benefits to the statutory minimum. See *Marotta v. NJAFIUA,* 280 *N.J.Super.* 525, 656 *A.*2d 20 (App.Div. 1995), *aff'd o.b.,* 144 *N.J.* 325, 676 *A.*2d 1064 (1996) (holding third–party coverage under void policy is restricted to minimum limits required by compulsory insurance law requirements).

The trial court granted Palisades's motion for summary judgment, finding that Leonel made material misrepresentations to the company. Although an insurer is liable to third parties for minimum PIP benefits notwithstanding that a policy later may have been declared void, the court observed that that did not compel payment of Paule's claim. The court determined that as Leonel's wife and resident of his household, Paule was an "additional insured" member of the household seeking first-party coverage. As a first-party insured, she was not entitled to recover under the void policy.

The Appellate Division affirmed. *Palisades Safety & Ins. Co. v. Bastien,* 344 *N.J.Super.* 319, 781 *A.*2d 1101 (2001). The court agreed that Paule's claim, made by a resident spouse, properly was viewed as a claim for first-party PIP benefits, which Palisades was not required to honor. *Id.* at 324–25, 781 *A.*2d 1101. We granted certification, 172 *N.J.* 357, 798 *A.*2d 1270 (2002).

## II.

The Legislature provided for PIP benefits as part of New Jersey's no-fault compulsory automobile-insurance system in the New Jersey Automobile Reparation Reform Act, *N.J.S.A.* 39:6A–1 to –35 (the Act). Since their enactment in 1972, PIP statutory benefits are a required component of every standard automobile

insurance policy, and provide an efficient system of "recovery for losses sustained in automobile accidents." Craig & Pomeroy, *New Jersey Auto Insurance Law* § 4:1 (2002). Stated generally, the benefits include payment of medical expenses, without regard to fault, for the named insured and resident members of his or her family, others occupying a vehicle of the named insured, or pedestrians injured in an automobile accident. *N.J.S.A.* 39:6A–4.

As remedial legislation that is protective of automobile accident victims, *New Jersey Mfrs. Ins. v. Griffin,* 253 *N.J.Super.* 173, 177, 601 *A.*2d 261 (1991), the PIP statute is given liberal construction to provide such victims with the "broadest possible coverage." *Svenson v. National Consumer Ins. Co.,* 322 *N.J.Super.* 410, 416, 731 *A.*2d 91 (App.Div.1999). Notwithstanding the indulgent view we accord an injured party's claim for PIP benefits, such coverage is unavailable when it is sought as part of an insured's first-party claim for benefits under his or her own policy of insurance declared void because of material misrepresentations made to the insurer. See *Remsden v. Dependable Ins. Co.,* 71 *N.J.* 587, 589, 367 *A.*2d 421 (1976) (stating material misrepresentations in application may justify rescission of policy *ab initio*); *Lovett v. Alan Lazaroff & Co.,* 244 *N.J.Super.* 510, 513, 582 *A.*2d 1274 (App.Div.1990) (holding PIP benefits unavailable to additional insureds under void policy).

A misrepresentation, made in connection with an insurance policy, is material if, when made, "a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important in determining its course of action. In effect, materiality [is] judged according to a test of prospective reasonable relevancy." *Longobardi v. Chubb Ins. Co. of N.J.,* 121 *N.J.* 530, 542, 582 *A.*2d 1257 (1990). As we have stated, "[t]he right rule of law . . . is one that provides insureds with an incentive to tell the truth. It would dilute that incentive to allow an insured to gamble that a lie will turn out to be unimportant." *Id.* at 541–42, 582 *A.*2d 1257. Accordingly, our test for materiality "encourages applicants to be honest." *Mass. Mut. v. Manzo,* 122 *N.J.* 104, 115, 584 *A.*2d

190 (1991) (explaining that misrepresentation is material if it "naturally and reasonably influence[s] the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premiums") (citation omitted).

### III.

■ There is no question but that Leonel made material misrepresentations to the insurer commencing with his application and continuing throughout the insurer/insured relationship. Applying the standard we announced in *Longobardi*, Leonel's misrepresentations indisputably affected assessment of the risk and the premium charged. Because Leonel shielded Paule's existence from Palisades, the insurer was unable to assess generally the underwriting costs of a second driver in the household, as well as the risks associated with the type of driving in which Paule would engage (*i.e.*, commutation or pleasure) and usage (average miles per driver). Moreover, the company was prevented from considering specifically Paule's driving record and any relevant claims history. Thus, by denying Palisades essential information relevant to its concerns and important to its course of action, Leonel made material misrepresentations in the procurement of his automobile policy. Accordingly, Palisades was entitled to an order declaring the policy void. *Remsden, supra,* 71 *N.J.* at 589, 367 *A.*2d 421.

As noted correctly by the courts below, although the company may rescind the policy, thereby disentitling Leonel to any PIP coverage as the named insured, that does not mean that it escapes liability in respect of innocent, third-party members of the public whose protection is a paramount concern of the PIP, no-fault system. *Compare Lovett, supra,* 244 *N.J.Super.* at 513, 582 *A.*2d 1274 (denying to resident son, injured while driving his own uninsured vehicle, PIP coverage as additional insured under mother's void policy), *with Fisher v. N.J. Automobile Full Ins. Underwriting Ass'n,* 224 *N.J.Super.* 552, 557–58, 540 *A.*2d 1344 (App.

Div.1988) (requiring insurer to provide minimal third-party PIP benefits to passenger, injured in insured vehicle, notwithstanding that policy on vehicle was declared void *ab initio*). The narrow question here is how to treat a resident spouse, whom we assume was innocent of the intentional misrepresentations of her spouse, under her household's voided automobile insurance policy.

As Leonel's spouse residing in his household, Paule plainly met the statutory requirements for an additional "named insured." *N.J.S.A.* 39:6A–2g. Leonel lied about his marital status and omitted his wife's name in response to the company's question concerning household residents over the age of sixteen. Because he failed to "name" Paule as a resident of the same household, Palisades was unable to assess that additional aspect of the first-party risk involved in insuring the household's vehicles. Accordingly it did not include the cost of that risk in the premium charged. Leonel had an obligation to answer the insurer's inquiry thoroughly and honestly. See *N.J.S.A.* 17:33A–4. Leonel's failure to identify Paule, either as his spouse or as another person of driving age residing in the household, should not result in her achieving a different status than that which she would have under law had the application been answered correctly, that is, as a first-party, additional named-insured claimant.

Paule contends that she should be treated as a third-party claimant because she did not know that her husband had lied to Palisades about her, causing their policy of automobile insurance to be voided. We note the incongruous result that would occur were Paule to be placed in the same position as that of an innocent, injured third party seeking coverage under Leonel's void policy. Had Paule correctly been identified as Leonel's spouse residing in his household, and had the policy been voided for some other reason, such as a failure to pay the initial premium, Paule would be denied PIP benefits as an additional insured. See *Lovett, supra,* 244 *N.J.Super.* at 513, 582 *A.*2d 1274. The fact that Leonel's misrepresentation went directly to his marital status

should not result in Paule achieving a better position than she otherwise would have held.

Thus, Paule's status is properly that of an additional named insured entitled to first-party PIP coverage when available under the household's policy. The question remains whether it would be more appropriate and consistent with the policies underlying PIP protection to treat Paule differently than her husband under the void policy because she lacked knowledge of the misrepresentations. In our view, other considerations militate against treating Paule differently than Leonel.

A spouse, licensed to drive and living in the same household as the other spouse, is in a unique position to be aware of the other spouse's interactions with the insurer of the household's vehicles. Responsible adults should inform themselves in respect of important insurance-related matters pertinent to their household, and should be encouraged to do so. The strong public policy against the proliferation of insurance fraud favors treating a resident spouse in Paule's position in the same manner as her husband, that is, entitled to first-party coverage only, when available. The facts here are distinguishable from those cases involving true third parties who were allowed to recover under a void policy. *See, e.g., Fisher, supra,* 224 *N.J.Super.* at 552, 540 *A.*2d 1344 (allowing recovery for plaintiff injured in accident involving car owned by friend and driven by third person); *Atlantic Cas. Ins. Co. v. Bingham,* 10 *N.J.* 460, 92 *A.*2d 1 (1952) (allowing recovery for passengers in taxi notwithstanding that insurance policy on taxi was void *ab initio*). Moreover, our refusal to reward fraud here draws support from the life insurance context, where it is "firmly embedded in the jurisprudence of this State," *Manzo, supra,* 122 *N.J.* at 111, 584 *A.*2d 190, that a policy may be rescinded and benefits denied to the innocent intended beneficiary based on material misrepresentations, even when the misrepresentations are innocent. *Ledley v. William Penn Life Ins. Co.,* 138 *N.J.* 627, 635, 651 *A.*2d 92 (1995).

Here, denial of PIP benefits is appropriate because the fraud was intentional and Paule was an incidental beneficiary of the reduced premiums paid for the deceptively represented risk insured. The household comprised of Leonel and Paule would benefit further if Palisades were required to provide the statutory minimum PIP benefits. Allowing recovery in these circumstances would result in a disincentive to a married insurance applicant to tell the truth. If an applicant were to lie about marital status and the presence of a resident spouse of driving age, the household pays a lower premium. If the spouse named in the policy were to be injured later in an automobile accident, the misrepresentation about marital status would likely go undetected and unpunished. The insurance company would have no reason to suspect the deception, and accordingly, we assume, would provide PIP benefits to the named insured. Similarly, the deception goes unpunished if PIP benefits were made available to the unnamed spouse injured later in an automobile accident.

We hold that the public policy that requires an insurer to pay to innocent third parties injured in automobile accidents minimum PIP benefits available under our compulsory insurance requirements does not apply to a resident spouse in Paule's position. Our holding accords with the salutary efforts being made in this State [1] to deter insurance fraud in all contexts.

## IV.

The decision of the Appellate Division is affirmed.

---

[1] In addition to the long line of judicial decisions that have refused to reward insurance fraud, we note that the other branches of government have increased their antifraud measures in recent years, targeting exactly the type of fraud at issue here. See *N.J.S.A.* 17:33A–4a(4)(b). Indeed, insurance application forms must inform an applicant for insurance that the inclusion of false or misleading information on an application for insurance may subject the applicant to criminal or civil penalties. *N.J.S.A.* 17:33A–6. *See also* http://www.njinsurance-fraud.org (website for the Office of the New Jersey Insurance Fraud Prosecutor) (stating, under link for "Fraud Examples," "It's illegal to make an oral or written statement which is false or misleading in order to obtain insurance (such as home, health, life, or automobile insurance)) (last visited December 20, 2002).

*For affirmance*—Chief Justice PORITZ and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, ZAZZALI and ALBIN—7.

*Opposed*—None.