881 A.2d 810 (2005)
380 N.J. Super. 259
Deborah MANNION, Plaintiff,
v.
James M. BELL, Parkway Insurance Company, and Liberty Mutual Insurance Company, Defendants.
Superior Court of New Jersey, Law Division, Monmouth County.
Decided May 16, 2005.
Alfred J. Quasti, Haddon Heights, for defendant Parkway Insurance Company.
Sherman & Viscomi (Denise F. Tunney, appearing), for defendant Liberty Mutual Fire Insurance Company, improperly impleaded as Liberty Mutual Insurance Company.
PERRI, J.S.C.
This matter involves a claim by an innocent third party for liability coverage under a fraudulently obtained automobile insurance policy. The court finds that, with the Legislature's modification of compulsory automobile liability insurance under the Automobile Insurance Cost Reduction Act of 1998 ("AICRA"), the insurer's obligation to provide coverage is limited to the "basic policy" as set forth in N.J.S.A. 39:6A-3.1.
The facts are essentially undisputed. On June 2, 2001, plaintiff Deborah Mannion was traveling westbound on Route 33 *811 in Neptune Township when she was struck in the rear by a 1984 Dodge Aries automobile owned and operated by defendant James Bell ("Bell"). At the time of the accident, Mannion was insured under a personal automobile insurance policy issued by defendant Liberty Mutual Fire Insurance Company. Mannion's policy provided uninsured/underinsured motorist benefits with limits of $25,000 per person/$50,000 per occurrence.
Mannion filed suit against Bell on October 7, 2002, for personal injuries sustained in the accident. Bell did not respond to the Complaint and default was entered against him on October 7, 2003. On February 5, 2004, Mannion amended her Complaint to seek a declaration of coverage for Bell under an automobile insurance policy issued to Bell's father by defendant Parkway Insurance Company. In the alternative, Mannion sought a declaration that Liberty Mutual was required to provide uninsured motorist benefits pursuant to her policy.
Bell's parents, Michael Bell ("Michael") and Gail Bell ("Gail"), divorced in October of 2000. At the time of the accident, Bell was 24 years of age and resided at 28 Oxford Road, Brick. Michael resided at 229 Essex Drive, Brick.
On March 13, 2001, Michael submitted an application to Parkway for an insurance policy covering his 1985 Chevrolet wagon and was issued a policy with liability limits of $100,000 per person/$300,000 per accident. Without Michael's knowledge or consent, Gail contacted Parkway on April 16, 2001, and requested coverage for Bell's 1984 Dodge Aries under Michael's policy. She advised Parkway that she was Michael's ex-wife and that Michael had moved to 28 Oxford Road, Brick. She also advised that Bell was a resident of his father's household and an occasional user of the 1984 Dodge Aries. Relying on Gail's representations, Parkway amended Michael's policy to provide coverage for the 1984 Dodge Aries and to list Bell as an additional driver in the household.[1]
In fact, all of Gail's statements to Parkway were false.[2] Michael never moved from the Essex Drive address nor did Bell ever reside with him. Michael had no ownership interest in the 1984 Dodge Aries and had no intention of providing or paying for insurance for Bell.
Parkway now moves for summary judgment dismissing Mannion's declaratory judgment action on the basis that insurance coverage for Bell and his vehicle was fraudulently obtained. Liberty Mutual opposes the motion, claiming that in the absence of fraud by the insured, the policy remains in full force and effect for the benefit of Mannion and Liberty Mutual which would otherwise be liable for the claim.
It is a well established principle of contract law that "[w]hen a contract is obtained by fraud, the law grants the injured party a choice. He may rescind or affirm." Merchants Indem. Corp. v. Eggleston, 37 N.J. 114, 130, 179 A.2d 505 (1962). In the case of insurance contracts, however, the courts in New Jersey have consistently held that "an insurer cannot, on the ground of fraud or misrepresentations *812 relating to the inception of the policy, retrospectively avoid coverage under a compulsory or financial responsibility insurance law so as to escape liability to a third party." Williams v. American Home Assurance Co., 121 N.J.Super. 351, 364, 297 A.2d 193 (App.Div.1972) (citations omitted). A material misrepresentation of fact[3] by an insured may render the policy void as to the insured but will not preclude coverage in favor of an innocent third party. Fisher v. New Jersey Auto. Full Ins. Underwriting Ass'n, 224 N.J.Super. 552, 540 A.2d 1344 (App.Div.1988).[4]
In Fisher, the insured's policy was declared void ab initio when it was discovered that he was not a "qualified applicant" for insurance through the NJAFIUA. Id. at 556, 540 A.2d 1344. The Appellate Division found the insured's misrepresentations did not preclude PIP coverage in favor of an injured passenger "[s]ince PIP coverage is compulsory for any automobile `registered or principally garaged in this State' N.J.S.A. 39:6A-3 ...." Id. at 558-559, 540 A.2d 1344.[5]
Later, in Marotta v. New Jersey Auto. Full Ins. Underwriting Ass'n., 280 N.J.Super. 525, 532, 656 A.2d 20 (App.Div.1995), the appellate court held that the insurer's obligation to provide liability coverage under a fraudulently obtained policy was limited to the $15,000 per person/$30,000 per accident minimum mandated by N.J.S.A. 39:6A-3. In that case, Marotta misrepresented his status as a New Jersey resident and obtained an automobile liability policy from the defendant with a $500,000 policy limit. Focusing on the compulsory nature of automobile insurance in New Jersey and the minimum limits required thereunder, the court found
[the NJAFIUA] owes an obligation to provide indemnity to Marotta against the Berks' claims equivalent to our compulsory insurance law, N.J.S.A. 39:6A-3 and N.J.S.A. 17:30E-1, which established the NJAFIUA. A driver such as Berk has the right to expect that all *813 other drivers will be insured to the extent required by compulsory insurance. If additional protection is desired, a vehicle owner may purchase uninsured/underinsured coverage through the owner's own insurance company.
[Id. at 532, 656 A.2d 20.]
Effective May 19, 1998, N.J.S.A. 39:6A-3 was amended to provide:

Except as provided by section 4 of P.L. 1998, c. 21 (C.39:6A-3.1), every owner or registered owner of an automobile registered or principally garaged in this State shall maintain automobile liability insurance coverage, under provisions approved by the Commissioner of Banking and Insurance, insuring against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of an automobile wherein such coverage shall be at least in:
a. an amount or limit of $15,000.00, exclusive of interest and costs, on account of injury to, or death of, one person, in any one accident; and
b. an amount or limit, subject to such limit for any one person so injured or killed, of $30,000.00, exclusive of interest and costs, on account of injury to or death of, more than one person, in any one accident; and
c. an amount or limit of $5,000.00, exclusive of interest and costs, for damage to property in any one accident.
[N.J.S.A. 39:6A-3 (emphasis supplied).]
N.J.S.A. 39:6A-3.1 allows vehicle owners to comply with their compulsory financial responsibility obligation by purchasing a "basic policy" which provides limited PIP and property damage coverage. The purchase of liability or bodily injury insurance is optional under the basic policy:
As an alternative to the mandatory coverages provided in sections 3 and 4 of P.L. 1972, c. 70 (C.39:6A-3 and 39:6A-4), any owner or registered owner of an automobile registered or principally garaged in this State may elect a basic automobile insurance policy providing the following coverage:
a. Personal injury protection coverage, for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household, who sustained bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile, or as a pedestrian, caused by an automobile or by an object propelled by or from an automobile, and to other persons sustaining bodily injury while occupying, entering into, alighting from or using the automobile of the named insured, with the permission of the named insured....
b. Liability insurance coverage insuring against loss resulting from liability imposed by law for property damage sustained by any person arising out of the ownership, maintenance, operation or use of an automobile in an amount or limit of $5,000, exclusive of interest and costs, for damage to property in any one accident.
c. In addition to the aforesaid coverages required to be provided in a basic automobile insurance policy, optional liability insurance coverage insuring against loss resulting from liability imposed by law for bodily injury or death in an amount or limit of $10,000, exclusive of interests and costs, on account of injury to, or death of, one or more persons in any one accident.
[N.J.S.A. 39:6A-3.1.]
The validity of the "basic policy" and its optional bodily injury insurance was recognized by the Appellate Division in New Jersey Coalition of Health Care Professionals, *814 Inc. v. New Jersey Dept. of Banking and Ins., Div. of Ins., 323 N.J.Super. 207, 254, 732 A.2d 1063 (App.Div.1999).
Pursuant to N.J.S.A. 39:6A-3.1, the minimum compulsory insurance required in New Jersey at the time of Mannion's accident was the "basic policy" which provides limited PIP benefits and property damage coverage up to $5,000. Since the purchase of liability coverage under such a policy is optional, it cannot be deemed compulsory under the law.
As stated by the court in Marotta, supra at 532, 656 A.2d 20, drivers are entitled to the reasonable expectation that "all other drivers will be insured to the extent required by compulsory insurance." Mannion thus could expect no more from Bell than the minimum coverage required by the "basic policy." In reality, Mannion did precisely what the court in Marotta anticipated would be done by a driver desiring additional coverage, which was to purchase "uninsured/underinsured coverage through the owner's own insurance company." Id.
Accordingly, the court finds that Parkway is not required to provide liability coverage in this matter and summary judgment is granted in its favor.
NOTES
[1] Michael had previously made arrangements to pay his insurance premiums by payroll deduction. He was therefore unaware that the charge he assumed to be "another New Jersey insurance increase" was the additional premium for adding Bell and his vehicle to the policy.
[2] Bell and Gail were never deposed and the extent of Bell's knowledge or participation, if any, in Gail's fraud is unknown.
[3] "A misrepresentation, made in connection with an insurance policy, is material if, when made, `a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important in determining its course of action ....'" Palisades Safety & Insurance Association v. Bastien, 175 N.J. 144, 148-149, 814 A.2d 619 (2003) (citations omitted). Liberty Mutual does not dispute that the representations made by Gail were material or were of the type relied upon by insurance carriers in making decisions to extend coverage.
[4] Liberty Mutual asserts that Parkway cannot deny coverage to Bell because it accepted the policy amendment from someone other than an insured. It cites no legal precedent for this claim nor has it raised any issue of material fact that would support such a proposition, such as the opinion of an expert. While it is true that all of the cited cases involve fact patterns where it was the insured who made the misrepresentations, it is procurement of the policy by fraud, rather than the identity of the perpetrator, that forms the legal basis for rescission. It is only by virtue of the compulsory nature of automobile insurance that an exception has been carved out to require performance under an otherwise void contract.
[5] But see Palisades Safety & Insurance Association, supra, 175 N.J. 144, 814 A.2d 619, where the New Jersey Supreme Court held that even "innocent" third parties may be precluded from coverage. There, a husband misrepresented his marital status in an automobile insurance application. When his wife sought PIP benefits under her husband's policy, the Court held that although she may have been unaware of her husband's misrepresentations "[t]he strong public policy against the proliferation of insurance fraud favors treating a resident spouse in [the wife's] position in the same manner as her husband." Id. at 151, 814 A.2d 619. The Court explained that, because the wife was an incidental beneficiary of the reduced premiums paid for the deceptively represented risk, her position was distinguishable from "true third parties" entitled to recover under a void policy.