917 A.2d 839

NEW JERSEY MANUFACTURERS INSURANCE COMPANY, PLAINTIFF–APPELLANT, v. CHERYL M. VARJABEDIAN, LOUISE M. DENNEY, DEFENDANTS–RESPONDENTS, AND DANIEL GAFFNEY, DEFENDANT, AND CHERYL M. VARJABEDIAN, THIRD–PARTY PLAINTIFF, v. MOTOR CLUB OF AMERICA INSURANCE COMPANY, THIRD–PARTY DEFENDANT/FOURTH–PARTY PLAINTIFF–CROSS–APPELLANT, v. JOHN VARJABEDIAN, FOURTH–PARTY DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued March 5, 2007—Decided March 22, 2007.

Before Judges LINTNER, S.L. REISNER and SELTZER.

*Robert R. Nicodemo, III,* argued the cause for appellant (*Richard V. Cosentino,* on the brief).

*Susan C. Sautner,* argued the cause for cross-appellant (*Garvey, Ballou & Van Dyke,* attorneys; *Ms. Sautner,* on the brief).

*Jeffrey S. Craig,* argued the cause for respondents (*Kelley, Wardell, Craig, Annin & Baxter,* attorneys; *Mr. Craig,* on the brief).

The opinion of the court was delivered by

LINTNER, J.A.D.

This insurance dispute requires us to determine the default personal injury liability coverage responsibility of an automobile insurance carrier where the tortfeasor's policy is subject to retroactive revocation following an otherwise covered accident. We hold that when faced with liability for damages sustained by an innocent third-party claimant, a carrier's default liability on a standard automobile policy subject to retroactive revocation is equal to the $15,000/$30,000 limits mandated by the Automobile Insurance Cost Reduction Act (AICRA), specifically *N.J.S.A.* 39:6A–2n and –3. Therefore, we overrule *Mannion v. Bell,* 380 *N.J.Super.* 259, 260–61, 881 *A.*2d 810 (Law Div.2005), which held that under AICRA the default coverage following retroactive revocation was limited to the Personal Injury Protection (PIP) benefits and property damage liability coverage mandated in the alternative basic policy described in *N.J.S.A.* 39:6A–3.1.

The facts are undisputed. On February 15, 2002, Daniel Gaffney's vehicle collided with a vehicle operated by Cheryl Varjabedian and owned by her mother, Louise Denney. At the time, Varjabedian lived with her mother. Gaffney filed suit for personal injuries, naming Varjabedian and Denney as defendants. Denney's vehicle was covered by an insurance policy issued by New Jersey Manufacturers Insurance Company (NJM) with a $300,000 liability limit. Varjabedian's husband, John, had a policy issued by Motor Club of America Insurance Company (Motor Club) on his Dodge pickup truck with liability limits of $100,000/ $300,000. Following the filing of Gaffney's complaint, both Motor Club and NJM sought declaratory relief to reform retroactively the respective liability policies to the minimum compulsory limits of $15,000/ $30,000 based upon misrepresentations concerning the status of Varjabedian's driver's license. Eventually, both NJM and Motor Club filed motions for summary judgment, which were granted, reducing both policies' liability limits to $15,000/$30,000.[1]

Subsequent to the entry of summary judgment, NJM and Motor Club became aware of the May 15, 2005, decision in *Mannion* when it was reported in the September 26, 2005, issue of the New Jersey Law Journal. *State Court Decisions—Trial Court,* 181 *N.J.L.J.* 1165, 1318 (Sept. 26, 2005). Both moved to amend the summary judgment orders previously entered to provide that each was not required to provide any liability coverage. Encompass Insurance Company, the carrier providing uninsured/underinsured (UM/UIM) motorist coverage for Gaffney, was permitted to intervene.[2] On February 7, 2006, the motion judge placed his opinion on the record. Noting that he was not bound by the Law Division decision in *Mannion,* the judge concluded that he was "clearly not satisfied that [NJM] has provided sufficient bases to warrant an

---

[1] The orders granting summary judgment in favor of Motor Club and NJM were entered respectively on September 9, 2005, and September 19, 2005.

[2] Encompass Insurance Company is not a party to this appeal. The appellate record provided does not indicate the limits of UM/UIM coverage provided by Encompass.

amendment of an order granting a motion for summary judgment previously ordered ... after the *Mannion* decision had been made."

On appeal, NJM and Motor Club argue that the motion judge erred in failing to follow the decision in *Mannion*. Varjabedian and Denney counter, arguing that the motion judge's determination was correct because the decision in *Mannion* runs counter to the State's long-standing policy favoring protection of innocent third parties. Initially, we note that the motion judge did not provide any legal analysis for his determination not to follow the decision in *Mannion*. Instead, he based his decision on procedural grounds, explaining that NJM and Motor Club obtained the specific relief they sought despite the prior decision in *Mannion*.

We now affirm the orders denying the amendment sought by NJM and Motor Club because we are convinced that the decision in *Mannion* is not in accord with provisions of AICRA, *N.J.S.A.* 39:6A–1.1 to –35, the corresponding amendments to *N.J.S.A.* 17:28–1.1 and *N.J.S.A.* 39:6B–1, and the un-repealed provisions of *N.J.S.A.* 39:6–48 dealing with financial responsibility.

Under *N.J.S.A.* 39:6–48(a), once its insured has become responsible for damages to third-party judgment creditors, an insurer is precluded from retroactively "cancel[ing]" or "annul[ing]" an automobile liability policy based upon prior misrepresentations or fraud of its insured. *N.J.S.A.* 39:6–48(a), however, permits a carrier to enter any defense it has against its insured when defending a judgment creditor's claim "with respect to the amount of the excess limits of liability." Based in part upon the non-cancellation provisions of *N.J.S.A.* 39:6–48, we have held that a carrier is not entitled to retroactively void a policy after its insured becomes liable to an innocent third party for damages. Rather, the insurer's policy is reduced to the minimum limits prescribed by statute. *Marotta v. N.J. Auto. Full Ins. Underwriting Ass'n,* 280 *N.J.Super.* 525, 530–32, 656 *A.*2d 20 (App.Div. 1995), *aff'd,* 144 *N.J.* 325, 676 *A.*2d 1064 (1996). In *Marotta,* decided before the passage of AICRA, we reasoned that "[a]

driver ... has the right to expect that all other drivers will be insured to the extent required by compulsory insurance." *Id.* at 532, 656 *A.*2d 20. We also anticipated that drivers desiring protection above the non-cancelable minimal coverage would protect themselves by purchasing UM/UIM coverage. *Ibid.*; *see also Fisher v. N.J. Auto. Full Ins. Underwriting Ass'n,* 224 *N.J.Super.* 552, 557–58, 540 *A.*2d 1344 (App.Div.1988) (requiring insurer to provide minimal third-party PIP benefits to passenger injured in insured vehicle, notwithstanding that policy on vehicle was declared void ab initio).

*N.J.S.A.* 39:6A–3 requires every owner of a motor vehicle to maintain automobile liability insurance coverage with minimum limits of $15,000 per injury and $30,000 per accident. *See also N.J.S.A.* 39:6B–1. Policies issued with the required $15,000/$30,000 limits are known as "standard automobile insurance polic[ies]." *N.J.A.C.* 11:3–3.2. Although this requirement pre-dated AICRA, AICRA still requires insurers to offer at least this level of coverage.

In 1998, with the adoption of AICRA, our Legislature introduced a non-compulsory option known as the "basic automobile insurance policy." *N.J.S.A.* 39:6A–3.1. Under subsection a and b of that statute, the basic policy is required to contain a reduced PIP coverage (subsection a) and property damage liability coverage in the amount of $5000 (subsection b). Subsection c requires carriers issuing basic policies to provide "optional liability insurance coverage" with limits of $10,000. Under *N.J.S.A.* 39:6A–3.1 the insured "may elect" a basic policy "[a]s an alternative to the mandatory coverages" provided in *N.J.S.A.* 39:6A–3 and –4.

With the adoption of AICRA, *N.J.S.A.* 17:28–1.1 was also amended to except mandatory UM coverage from the basic policy. Thus, while all other automobile policies provide mandatory UM coverage with minimum limits of $15,000/$30,000, *N.J.S.A.* 17:28–1.1a, the basic policy provides no first-party UM coverage. Along with the creation of the basic policy, *N.J.S.A.* 17:28–1.1e(2) was

amended to provide that automobiles covered with a basic policy are not considered uninsured motor vehicles.

In *Mannion,* the Law Division judge reasoned that, under AICRA, the minimum compulsory insurance at the time of the plaintiff's accident was the basic policy and, thus, the liability coverage, which was optional in the basic policy, was not compulsory coverage under the law. *Mannion, supra,* 380 *N.J.Super.* at 265, 881 *A.*2d 810. Relying on our decision in *Marotta,* the judge also reasoned that the injured plaintiff (1) could not expect the tortfeasor to have any more coverage than that provided by the basic policy and (2) could purchase first-party UM/UIM benefits, "precisely what the court in *Marotta* anticipated would be done by a driver desiring additional coverage." *Id.* at 265–66, 881 *A.*2d 810.

The decision in *Mannion* is flawed. Firstly, under *N.J.S.A.* 39:6A–3, drivers are required to have, and insurers are implicitly required to provide policies with minimum liability limits of $15,000/$30,000. "An insurer must afford liability coverage in at least the amount mandated by the legislature." *Proformance Ins. Co. v. Jones,* 185 *N.J.* 406, 415, 887 *A.*2d 146 (2005). It is only the insured, not the insurer, who can elect to purchase the reduced coverage provided with the basic policy. The basic policy as established by AICRA is not a legislatively favored option. Individuals wishing to purchase a basic policy must affirmatively choose the coverage after receiving a warning in bold-face, twelve-point type that the lack of liability insurance may subject them to claims or judgments for non-economic loss and may put their assets at risk if they are sued. *N.J.S.A.* 39:6A–3.2a. From the perspective of the insurers' obligation, the required compulsory insurance liability limits remain $15,000/$30,000. Indeed, *N.J.S.A.* 39:6A–3 is titled "**Compulsory automobile insurance coverage; limits.**"

It follows, therefore, that a person covered with compulsory standard liability insurance with the mandated UM coverage, no matter what the limits, has a right to expect all other drivers with

compulsory standard policies will have liability limits of at least $15,000/$30,000 personal injury limits. Such a result is consistent with "[o]ur comprehensive insurance scheme of mandating automobile insurance [which] evinces a strong legislative policy ... assuring at least some financial protection for innocent accident victims." *Proformance, supra,* 185 *N.J.* at 414–15, 887 *A.*2d 146. "[P]rotection of innocent third parties is a primary concern of our personal injury no-fault system." *Id.* at 420, 887 *A.*2d 146. Because both drivers were covered by standard policies, the applicable minimum compulsory liability coverage is $15,000/$30,000.

Secondly, the decision in *Mannion* may be incorrect in its assumption that an insured can obtain some protection by purchasing additional UM coverage. As we have previously pointed out, with the passage of AICRA, *N.J.S.A.* 17:28–1.1e(2) was amended to provide that automobiles covered with a basic policy are not considered uninsured motor vehicles. Thus, while not an issue in this case, we think it worthwhile noting that, contrary to the decision in *Mannion,* an innocent third party covered with just UM insurance, regardless of the limit, may be totally unprotected for personal injury damages if struck by a tortfeasor with the mandated basic policy.[3] Ordinarily, persons covered with mandated UM coverage, as required by *N.J.S.A.* 17:28–1.1, have no reason to expect that they would not be protected if struck by a vehicle with no liability insurance. Indeed, when the basic policy was established following the Governor's conditional veto, the Governor stated in a press release that, in addition to lowering the cost of insurance, "[t]he basic policy is also intended to reduce the number of uninsured drivers." Press Release, Office of the Governor, Gov. Whitman Signs Law to Reduce Auto Insurance Rates (May 19, 1998) (http://www.njstatelib.org/NJLH/LH9899/PDFDOCS/9899/S1051_1.PDF). This apparent anomaly in AICRA is one that the Legislature may want to address.

---

[3] Because UIM is not UM coverage, it also may not provide first-party personal injury protection to its insured where the tortfeasor has a basic policy with no personal injury liability coverage.

In this case, we do not reach the issue of whether a motorist with first-party UM or UIM coverage lacks insurance protection when injured in an automobile accident by a tortfeasor covered with the mandated basic policy. Instead, we focus on the narrow issue of retroactive reformation as it affects the parties to this appeal, both of whom are covered with standard policies. Under *N.J.S.A.* 39:6-48(a), as against an innocent third-party judgment creditor, it is an insurer's "excess" limits that can be protected by raising the same defenses that the insurer has against its own insured. The use of the word "excess" in *N.J.S.A.* 39:6-48(a) necessarily presupposes that there are lower mandated minimum limits of liability coverage. The alternative coverage provided by a basic policy under *N.J.S.A.* 39:6A-3.1 mandates no minimum amount of liability coverage. It only provides for optional liability coverage. The only mandated or compulsory minimum liability coverage limits in our statutes are the $15,000 per injury and $30,000 per accident, prescribed in both *N.J.S.A.* 39:6A-3 and *N.J.S.A.* 39:6B-1. Accordingly, a carrier seeking to retroactively void coverage based upon the prior conduct of its insured tortfeasor cannot rely on the alternative basic policy's lack of mandated liability coverage to avoid providing the minimum compulsory non-cancelable $15,000/$30,000 liability limits. Where the innocent third party chooses optional UIM coverage in excess of the mandatory UM minimum, first-party protection is provided for the amount purchased above the non-cancelable minimal mandated $15,000/$30,000 default liability coverage obligation of the liability carrier entitled to retroactive reformation.

Because there is no dispute concerning Gaffney's status as an innocent third party, we affirm the motion judge's order denying NJM's and Motor Club's motions to amend the orders requiring them to provide minimum liability coverage limits in the amount prescribed by *N.J.S.A.* 39:6A-3 and 39:6B-1.

Affirmed.