75 A.3d 1233

CITIZENS UNITED RECIPROCAL EXCHANGE, PLAINTIFF–APPELLANT, v. SABRINA A. PEREZ, LUIS MACHUGA, JONATHAN QUEVEDO, DEXTER GREEN, AND PROGRESSIVE GARDEN STATE INSURANCE COMPANY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 8, 2012—Decided September 13, 2013.

Before Judges FUENTES, ASHRAFI and HAYDEN.

*Eric Poe* argued the cause for appellant (*Bright & Sponder*, attorneys; *Chad B. Sponder*, of counsel and on the brief).

*Marc A. Deitch* argued the cause for respondents Dexter Green and Progressive Garden State Insurance Company (*Mr. Deitch*, on the brief).

*George R. Hardin* argued the cause for amicus curiae The Insurance Council of New Jersey (*Hardin, Kundla, McKeon & Poletto, P.A.*, attorneys; *Mr. Hardin* and *Arthur A. Povelones, Jr.*, on the brief).

The opinion of the Court was delivered by

HAYDEN, J.A.D.

Plaintiff Citizens United Reciprocal Exchange (CURE) filed a civil complaint seeking a declaration that an automobile insurance

policy it issued based on a fraudulent application was void from its inception and that it had no financial obligation under the policy. The trial judge affirmed the voiding of the policy but found that, for purposes of innocent third parties, the voided policy should be reformed to the mandatory minimum liability insurance coverage under *N.J.S.A.* 39:6A–3 of $15,000 per person and $30,000 per occurrence. CURE argues on appeal that since the automobile insurance reforms in 1998, when the newly created basic policy provided only optional liability coverage, there has been no mandatory minimum liability coverage in this State and no necessity for the issuer of a voided policy to pay liability claims of innocent third parties. We disagree and affirm.

The parties stipulated to the underlying facts giving rise to the controversy here. Defendant Luis Machuca,[1] while driving with defendant Jonathan Quevedo in a car owned by defendant Sabrina A. Perez, was involved in an auto accident with a car driven by defendant Dexter Green. Green claimed he was injured as a result of the accident and made a personal injury claim against Perez's policy.

Perez insured her automobile under a basic policy with the optional $10,000 liability coverage. When she applied for insurance, she did not list Machuca, the father of her two children, as a resident of her household. In a recorded statement five days after the accident, Perez acknowledged that Machuca lived with her. After a fraud investigation by the Bureau of Fraud Deterrence, Perez entered into a consent order admitting that she "knowingly presented false and misleading information to [ ] CURE by failing to disclose her boyfriend, Luis Machuca, on her application . . . ."

Due to Machuca's extremely poor driving record, CURE would not have issued Perez a policy if she had disclosed that Machuca was a household member. CURE also denied Green's personal injury claim, and by letter dated May 27, 2010, informed Perez

---

[1] Machuca is incorrectly spelled Machuga in the caption.

that the insurance policy was being retroactively voided ab initio due to the fraudulent information supplied in the application.

However, CURE instead filed a declaratory action seeking an order that the policy was void ab initio due to a material misrepresentation, that Perez and Machuca were liable to CURE for compensatory damages due to the fraudulent application, and that the reformed voided policy provided no liability coverage to innocent third parties. Green and his insurer, defendant Progressive Garden State Insurance Company, filed an answer. Defendants Perez, Machuca and Quevedo failed to file answers and defaults were entered against them. The remaining parties agreed to try the case on stipulated facts.

After hearing argument, on February 9, 2012, the trial judge granted CURE's first two requests for relief. In reference to the issue of the mandatory minimum liability amount, the judge, relying on *New Jersey Manufacturers Insurance Co. v. Varjabedian,* 391 *N.J.Super.* 253, 917 *A.*2d 839 (App.Div.), *certif. denied,* 192 *N.J.* 295, 927 *A.*2d 1294 (2007), held:

> I conclude that the only mandated or compulsory liability coverage limits in our statutes are the $15,000 per injury and $30,000 per accident prescribed in [*N.J.S.A.*] 39:6A-3 and 39:6B-1.
>
> I conclude as well that the alternative coverage provided by the basic policy under [*N.J.S.A.*] 39:6A-3.2 mandates no minimum amount of liability coverage. It simply provides for optional liability coverage.
>
> Accordingly, this Court finds that the amount of CURE's policy limits available to Dexter Green with regard to his personal injury claim is a compulsory minimum liability coverage limits in our statutes of $15,000 per injury, $30,000 per accident as prescribed under [*N.J.S.A.*] 39:6A-3 and 39:6B-1.

This appeal followed.

On appeal, CURE argues that in determining that the liability coverage for an innocent third party under a voided policy was $15,00/$30,000, the court's reasoning in *Varjabedian, supra,* 391 *N.J.Super.* at 258–60, 917 *A.*2d 839, was flawed. Instead, CURE urges us to adopt the reasoning in *Mannion v. Bell,* 380 *N.J.Super.* 259, 881 *A.*2d 810 (Law Div.2005), which *Varjabedian* specifically overruled. CURE maintains that, as the court held in *Mannion,* because the basic policy had no mandatory minimum

liability coverage, an innocent third party is not entitled to any liability coverage under any automobile insurance policy. *Id.* at 265, 881 *A.*2d 810. Both CURE and amicus curiae The Insurance Council of New Jersey argue that compelling any amount of liability coverage to innocent third parties rewards insurance fraud violators and frustrates the 1998 legislative reform of automobile insurance that led to the creation of the basic policy. Amicus further argues that the fallacious reasoning in *Varjabedian* can be seen here where under the basic policy the insured only opted for $10,000 liability coverage, but, by committing fraud, the insurer must pay claims up to $15,000. We find these arguments unpersuasive.

We begin with a review of the applicable legal principles that underpin this controversy.

"A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995) (citing *State v. Brown,* 118 *N.J.* 595, 604, 573 *A.*2d 886 (1990)). An appellate court's review on such matters is, therefore, de novo. *Potomac Ins. Co. of Ill. v. Pa. Mfrs. Ass'n Ins. Co.,* 425 *N.J.Super.* 305, 319, 41 *A.*3d 586 (App.Div.2012).

▮ Our no-fault system of first-party recovery for injuries sustained in automobile accidents encourages the prompt distribution of personal injury protection (PIP) benefits to accident victims. *See Amiano v. Ohio Cas. Ins. Co.,* 85 *N.J.* 85, 90, 424 *A.*2d 1179 (1981). The no-fault legislation is designed to "provide a minimum amount of protection to the public for injuries caused by ... automobiles." *Rutgers Cas. Ins. Co. v. LaCroix,* 194 *N.J.* 515, 523, 946 *A.*2d 1027 (2008) (quoting *Newcomb Hosp. v. Fountain,* 141 *N.J.Super.* 291, 294, 357 *A.*2d 836 (Law Div.1976)). "[T]he protection of innocent third parties is a primary concern of [New Jersey's] personal injury no-fault system ...." *Proformance Ins. Co. v. Jones,* 185 *N.J.* 406, 420, 887 *A.*2d 146 (2005).

When the named insured makes affirmative misrepresentations or material omissions in an application for insurance coverage, the insurer has the right to void an automobile insurance policy ab initio. *LaCroix, supra,* 194 *N.J.* at 527–29, 946 *A.*2d 1027. However, even when a policy is rescinded, PIP benefits may nevertheless remain payable to innocent third parties. *See Fisher v. N.J. Auto. Full Ins. Underwriting Ass'n,* 224 *N.J.Super.* 552, 558–59, 540 *A.*2d 1344 (App.Div.1988). "To hold otherwise . . . would undermine the legislative purpose of our No–Fault Law." *Id.* at 559, 540 *A.*2d 1344.

Where an insurance policy is void as to the maker of the fraud, the potential recovery under a retroactively revoked policy is the minimum compulsory insurance required by law. *Marotta v. N.J. Auto. Full Ins. Underwriting Ass'n,* 280 *N.J.Super.* 525, 532, 656 *A.*2d 20 (App.Div.1995), *aff'd o.b.,* 144 *N.J.* 325, 676 *A.*2d 1064 (1996). In *Marotta,* we held that an innocent third party "has the right to expect that all other drivers will be insured to the extent required by compulsory insurance." *Ibid.* We noted that for injuries over the minimum amount, a third party would look to his or her own policy's Uninsured or Underinsured Motorist provisions. *Ibid.*

Under the no-fault insurance system, every owner of a motor vehicle registered or garaged in New Jersey must maintain motor vehicle liability insurance coverage with minimum limits of $15,000/$30,000. *N.J.S.A.* 39:6B–1(a). *See Proformance Ins. Co., supra,* 185 *N.J.* at 420, 887 *A.*2d 146. This is known as the "standard policy". *N.J.S.A.* 39:6A–2(n). But, "notwithstanding" the mandate in subsection (a), an owner can satisfy the mandatory requirement by maintaining a basic policy. *N.J.S.A.* 39:6B–1(b). This additional policy was introduced in 1998, when, as part of the Automobile Insurance Cost Reduction Act (AICRA), *L.* 1998, *c.* 21 and *c.* 22, the Legislature established a noncompulsory option called the "basic automobile insurance policy" as an "alternative" to the mandatory coverage of the standard policy, *N.J.S.A.* 39:6A–3.1. The pertinent feature of the new limited basic policy was that

it provided an "optional liability insurance coverage" with a $10,000 limit. *N.J.S.A.* 39:6A-3.1(c).

In *Mannion, supra,* 380 *N.J.Super.* at 265–66, 881 *A.*2d 810, the judge found that the basic policy with its optional liability insurance is the minimum compulsory insurance in New Jersey, which meant that there was no longer any compulsory liability insurance in the State. In the judge's view, since the introduction of the basic policy, a driver's "reasonable expectation" could only be that the other driver did not have compulsory insurance. *Ibid.* Thus, she concluded that an innocent third party was entitled to no benefits in a voided policy, even a standard policy.

We specifically rejected the reasoning in *Mannion* as "flawed," explaining as follows:

Firstly, under *N.J.S.A.* 39:6A-3, drivers are required to have and insurers are implicitly required to provide policies with minimum liability limits of $15,000/$30, 000. An insurer must afford liability coverage in at least the amount mandated by the legislature. It is only the insured, not the insurer, who can elect to purchase the reduced coverage provided with the basic policy. The basic policy as established by AICRA is not a legislatively favored option. Individuals wishing to purchase a basic policy must affirmatively choose the coverage after receiving a warning in bold-face, twelve-point type that the lack of liability insurance may subject them to claims or judgments for non-economic loss and may put their assets at risk if they are sued. From the perspective of the insurers' obligation, the required compulsory insurance liability limits remain $15,000/$30,000. Indeed, *N.J.S.A.* 39:6A-3 is titled **"Compulsory automobile insurance coverage; limits."** [*Varjabedian,* 391 *N.J.Super.* at 258, 917 *A.*2d 839 (internal citations and quotation marks omitted).]

In *Varjabedian* we rejected the insurer's argument that the insured can obtain the same protection by purchasing Uninsured Motorists coverage because, under AICRA, automobiles covered by the basic policy are not considered "uninsured motor vehicles" pursuant to *N.J.S.A.* 17:28–1.1(e)(2). We observed that a person with the standard policy had the right to expect other drivers would have the standard minimum compulsory insurance. *Id.* at 258–59, 917 *A.*2d 839. We concluded that "a carrier seeking to retroactively void coverage based upon the prior conduct of its insured tortfeasor cannot rely on the alternative basic policy's lack of mandated liability coverage to avoid providing the minimum

compulsory non-cancelable $15,000/$30,000 liability limits." *Id.* at 260, 917 *A.*2d 839. *See also Proformance Ins. Co., supra,* 185 *N.J.* at 420–21, 887 *A.*2d 146 (Court considered whether to reform policy to the "statutorily-mandated insurance" of $15,000/$30,000); *Potenzone v. Annin Flag Co.,* 191 *N.J.* 147, 152, 922 *A.*2d 745 (2007) (noting that the minimum liability insurance coverage mandated by the Legislature was $15,000).

■ CURE reiterates the argument that we soundly rejected in *Varjabedian* : that once AICRA offered the basic policy with only a non-compulsory liability option, no driver had a reasonable expectation that all other drivers had at least the statutory minimum liability coverage. We again find this argument unpersuasive as it ignores the long-standing principle that our "insurance scheme of mandating automobile insurance evinces a strong legislative policy of assuring at least some financial protection for innocent accident victims." *Proformance Ins. Co., supra,* 185 *N.J.* at 414–15, 887 *A.*2d 146.

Our Supreme Court has consistently since AICRA followed the principle of reforming an auto insurance contract to protect innocent third parties up to the minimum compulsory limits. *See Proformance Ins. Co., supra,* 185 *N.J.* at 420, 887 *A.*2d 146; *Potenzone, supra,* 191 *N.J.* at 155, 922 *A.*2d 745. Additionally, the Legislature has not stepped in to modify that judicial determination. *See Klumb v. Bd. of Educ. of Manalapan–Englishtown Reg'l High Sch. Dist.,* 199 *N.J.* 14, 24–25, 970 *A.*2d 354 (2009) (citation omitted) ("The Legislature's failure to modify a judicial determination, while not dispositive, is some evidence of legislative support for the judicial construction of a statute.").

While the legislature offered an "alternative" basic policy, it has still provided for a comprehensive standard policy with mandated provisions, including mandatory liability coverage limits. *N.J.S.A.* 39:6A-3, 39:6B-1. Although the insured here elected the basic policy alternative, "[f]rom the perspective of the insurers' obligation, the required compulsory insurance liability limits remain $15,000/$30,000." *Varjabedian, supra,* 391 *N.J.Super.* at 258, 917

*A*.2d 839. Moreover, CURE's argument that such a result encourages fraud is unsupported in the record, particularly since the holder of the voided policy remains liable to the insurer for any claims paid. *See N.J.S.A.* 17:33A–7.

■ Thus, to dispel any lingering ambiguity and provide clear guidance to trial judges confronted by situations like the one we confront here, we now reaffirm the principle of law we established in *Varjabedian* :

> The alternative coverage provided by a basic policy under *N.J.S.A.* 39:6A–3.1 mandates no minimum amount of liability coverage. It only provides for optional liability coverage. The only mandated or compulsory minimum liability coverage limits in our statutes are the $ 15,000 per injury and $30,000 per accident, prescribed in both *N.J.S.A.* 39:6A–3 and *N.J.S.A.* 39:6B–1. *Accordingly, a carrier seeking to retroactively void coverage based upon the prior conduct of its insured tortfeasor cannot rely on the alternative basic policy's lack of mandated liability coverage to avoid providing the minimum compulsory non-cancelable $15,000/$30, 000 liability limits.*
>
> [*Varjabedian, supra,* 391 *N.J.Super.* at 260, 917 *A*.2d 839 (Emphasis added).]

We recognize that the automobile insurance law continues to provide for mandatory minimum liability coverage and also provide for optional liability coverage. *N.J.S.A.* 39:6B–1. To the extent that this creates an anomalous situation, it may be appropriate for the Legislature to address. *See Shaw v. City of Jersey City,* 174 *N.J.* 567, 582, 811 *A*.2d 404 (2002).

Affirmed.

ASHRAFI, J.A.D., dissenting.

Defendant Sabrina A. Perez fraudulently obtained a basic automobile insurance policy with $10,000 of liability coverage, pursuant to *N.J.S.A.* 39:6A–3.1. The majority holds that plaintiff CURE, the insurance carrier, must provide up to $15,000 liability coverage to reimburse an innocent third-party, Dexter Green, for his injuries resulting from an accident caused by the driver of Perez's vehicle. The fraud against CURE had nothing to do with the amount of coverage. It should not increase the amount of coverage. For his injuries, Green should be entitled to claim up to $10,000 in reimbursement from CURE.

The majority confirms our holding in *New Jersey Manufacturers Insurance Co. v. Varjabedian*, 391 *N.J.Super.* 253, 258, 917 *A.*2d 839 (App.Div.), *certif. denied*, 192 *N.J.* 295, 927 *A.*2d 1294 (2007), that a standard auto insurance policy that was voided because it was fraudulently obtained should be reformed to provide the minimum $15,000/$30,000 liability coverage required by *N.J.S.A.* 39:6A–3 and 39:6B–1. Plaintiff CURE and amicus curiae, The Insurance Council of New Jersey, argue that *Varjabedian* was wrongly decided because New Jersey automobile insurance law does not mandate a minimum of $15,000/$30,000 liability coverage for all vehicles insured in this State. Since *Varjabedian* was decided more than six years ago, the Legislature has not acted to supersede or revise its holding in accordance with arguments made on this appeal by plaintiff and amicus curiae. Consequently, I would not depart from the holding of *Varjabedian* as it applies to a standard auto policy pursuant to *N.J.S.A.* 39:6A–3 and 39:6B–1.

But this case does not involve a standard auto policy. The policy at issue here is a basic policy authorized by *N.J.S.A.* 39:6A–3.1. It was issued with $10,000 maximum liability coverage. As I see it, the majority's decision is contrary to the Supreme Court's discussion of related issues in *Palisades Safety & Insurance Ass'n v. Bastien*, 175 *N.J.* 144, 814 *A.*2d 619 (2003), and *Rutgers Casualty Insurance Co. v. LaCroix*, 194 *N.J.* 515, 946 *A.*2d 1027 (2008), namely, that an innocent injured party is not entitled to more coverage than provided by the policy that was issued.

In the two Supreme Court cases, the disputes involved personal injury protection (PIP) coverage for household members where the insured had made material misrepresentations in obtaining an auto policy. The Court confirmed the holding of *Marotta v. NJAFIUA*, 280 *N.J.Super.* 525, 656 *A.*2d 20 (App.Div.1995), *aff'd o.b.*, 144 *N.J.* 325, 676 *A.*2d 1064 (1996), and stated that innocent, injured parties remain protected by an auto policy despite fraud in its procurement, although at reduced, statutorily-mandated amounts of coverage. *LaCroix, supra*, 194 *N.J.* at 530–33, 946

A.2d 1027; *Bastien, supra,* 175 *N.J.* at 147, 814 *A.*2d 619; *see also Fisher v. N.J. Auto. Full Ins. Underwriting Ass'n,* 224 *N.J.Super.* 552, 554–59, 540 *A.*2d 1344 (App.Div.1988) (innocent injured passenger was entitled to PIP coverage despite fraud in the procurement of an auto policy). However, the Court also stated that the insured's fraud does not enhance coverage provided by the policy. *LaCroix,* 194 *N.J.* at 526, 946 *A.*2d 1027; *Bastien,* 175 *N.J.* at 151, 814 *A.*2d 619. Here, the majority has done just that; it has enhanced the amount of coverage provided by the CURE policy.

In *Bastien, supra,* 175 *N.J.* at 146, 814 *A.*2d 619, the insured had fraudulently obtained a policy at a lower premium by purposely omitting his spouse from the application for insurance as a household member and an insured driver under the policy. The issue before the Court was whether a presumably innocent, injured spouse was nevertheless entitled to PIP coverage. *Id.* at 145, 150, 814 *A.*2d 619. The Court held she was not. *Id.* at 152, 814 *A.*2d 619. It reasoned that she was "an incidental beneficiary" of her husband's fraud, and that the fraud "should not result in [the wife] achieving a better position than she otherwise would have held" if no fraud had been committed. *Id.* at 151–52, 814 *A.*2d 619.

In *LaCroix, supra,* 194 *N.J.* at 518, 946 *A.*2d 1027, an innocent teenage daughter in the household had been purposely omitted from her father's auto insurance application and was later injured in an accident. The Court relied upon equitable considerations in holding that the daughter was nevertheless entitled to PIP coverage, although at the minimum amounts required by statute. *Id.* at 532–33, 946 *A.*2d 1027. The Court stated:

> Our opinion [in *Bastien* ] stressed that a claimant must be evaluated as if he or she held the status to which he or she would have been entitled had the named insured completed the application honestly. We noted that parties seeking to recover should not be permitted to improve their likelihood of recovery solely on the strength of a misrepresentation.
>
> [*Id.* at 526, 946 *A.*2d 1027 (citing *Bastien, supra,* 175 *N.J.* at 150, 814 *A.*2d 619).]

The incongruous result in this case may be caused by the reference in *Varjabedian, supra,* 391 *N.J.Super.* at 260, 917 *A.*2d

839, to "reformation" of a fraudulently obtained policy. The majority concludes that reformation of the CURE policy requires that it provide the $15,000/$30,000 minimum mandatory coverage of *N.J.S.A.* 39:6A–3 and 39:6B–1. Actually, the court's function is not to reform the insurance policy, but instead, to "mold[ ]" an appropriate "rescission remedy," *LaCroix, supra*, 194 *N.J.* at 532, 946 *A.2d* 1027, for the defrauded insurance carrier so that it is provided relief but innocent third parties are also protected.

In *LaCroix*, the Court explained the equitable basis by which the law requires coverage for innocent injured parties where an auto policy is otherwise voided because of fraud in its procurement. *Id.* at 528–29, 946 *A.2d* 1027. The Court stated:

> Rescission remains a form of equitable relief in whatever setting its need arises, and courts wielding that remedy retain the discretion and judgment required to ensure that equity is done. In furtherance of that objective, a court may shape the rescission remedy in order to serve substantial justice.
>
> [*Ibid.*]

Here, the rescission remedy afforded to CURE should be molded and shaped to void the CURE policy with respect to those persons who benefitted from the fraud but not with respect to an innocent injured third party such as Green. Although Perez's misrepresentation in obtaining the policy permits CURE to void the policy as it applies to her and other incidental beneficiaries of her fraud, CURE may not void the policy as to Green. At the same time, Green is entitled to no more than the policy provided. As to Green, the policy should be enforced as it was issued, with a $10,000 limit of coverage.